CHARLES LOCKE, Plaintiff, *v.* FLOYD GIBBONS, Defendant.*

Supreme Court, Special Term, New York County, October 7, 1937.

*Richard J. Mackey* and *T. Roger Mahon*, for the plaintiff.

*Dorsey & Flynn* [*Julius M. Jacobs* of counsel], for the defendant.

PECORA, J. The defendant moves for judgment on the pleadings dismissing the complaint on the ground that it fails to state a cause of action. The action is for damages for an alleged defamation during a broadcast made by the defendant over Radio Station WLW, of Cincinnati, Ohio, on January 28, 1937. The subject-matter of the broadcast was the disastrous flood which inundated

* Affd., 253 App. Div. ——. See, also, *Locke v. Benton & Bowles, Inc.* (165 Misc. 631; revd., 253 App. Div. ——).

much of the Ohio valley at that time. The plaintiff charges that he, as a professional writer active in newspaper and radio work, was engaged to prepare the script for the defendant's broadcast. It is claimed, however, that in the course of the actual broadcast the defendant interpolated certain statements of his own authorship, without indicating that they were his. These interpolations, it is further charged, were misstatements deliberately interjected for the purpose of creating melodramatic situations and falsely indicating that sensational happenings were occurring at and around the actual scene of the broadcast. Furthermore, the plaintiff alleges that they were an attempt to magnify and heighten the picture of the sufferings of the people of Cincinnati. It is alleged that by reason of these interpolations and in view of the defendant's express reference to the plaintiff's authorship of the broadcast material, the plaintiff was damaged in his reputation as an accurate news reporter and lost valuable employment as a writer for radio broadcasts. No special damages are alleged.

The question here raised as to the sufficiency of the complaint involves a consideration of the relatively novel proposition of whether defamation over the radio constitutes the tort of libel or that of slander. Owing to the comparative infancy of the radio industry, it is not surprising that the question has not yet been directly raised and passed upon by the reviewing courts of our State. Counsel for the parties hereto have not, apparently, extended their research to outside jurisdictions. This has prompted the court to do so.

In other jurisdictions the courts are in conflict. The only decision squarely in point is *Meldrum* v. *Australian Broadcasting Co.* ([1932] Vict. L. R. 425), which held that the action was one for slander and not for libel. In *Sorenson* v. *Wood* (123 Neb. 348; 243 N. W. 82 [1932]) the radio address had been written before the broadcast and was read by the defendant. The court there said: "There can be and is little dispute that the *written* words charged and published constitute libel rather than slander." (Italics mine.) It seems evident from the entire opinion in that case that the court's conclusion rested upon the fact that the defendant read the defamatory matter from manuscript. In *Coffey* v. *Midland Broadcasting Co.* (8 F. Supp. 889 [1934 D. C. W. D. of Mo.]) the court cites the *Sorenson* case (*supra*) with approval. However, there the defamatory words charged that the plaintiff was an ex-convict. Whether libelous or slanderous, such defamation clearly would be actionable. In addition, the case involved a motion for remanding an action to the State courts. The opinion does not discuss the question here involved. It merely draws an analogy between the liability of the broadcasting company and that of a

newspaper publishing a libel. In *Miles* v. *Waswer, Inc.* (172 Wash. 466; 20 P. [2d] 847), an action for slander was brought against a broadcasting company. However, since the court considered the language complained of as slanderous *per se*, it held it was unnecessary to determine whether it constituted libel or slander. The court said: " The reading of that manuscript over the broadcasting station is the basis of this action. In the briefs, there is some discussion as to whether the action is one for libel or for slander. This question we shall not decide, because, in so far as this case is concerned, it is immaterial. We shall assume that the words spoken, if they are actionable, must come within the rule of slander." In *Weglein* v. *Golder* (317 Penn. St. 437; 177 A. 47 [1935]) the script of a speech had been prepared and delivered to the newspapers before it was spoken over the radio. Although there was no evidence of actual publication in the newspapers, the court deemed that its delivery to the newspapers constituted a technical publication of a libel. It was held, therefore, that the lower court committed no error in submitting the case to the jury as one of libel, rather than of both libel and slander. In *Singler* v. *Journal Co.* (218 Wis. 263; 260 N. W. 431 [1935]) the court said: " Due to the fact that this was a radio broadcast, it is a serious question whether the case is governed by the law of libel or that of slander."

In *King* v. *Winchell* (248 App. Div. 809 [4th Dept. 1936]) the court affirmed, without opinion, a judgment dismissing a complaint upon the close of the plaintiff's case. There the action was brought for slander, and also under the Civil Rights Law for a violation of the plaintiff's right of privacy. The alleged defamatory matter was broadcast by the defendant over the radio. The defendant's brief in the Appellate Division urged that the action was one for slander and not for libel. Two of the judges dissented upon the ground that the evidence was sufficient to go to the jury on the question of " defamation."

In addition to the conflict in the courts, we find an equal lack of uniformity among text writers and legal commentators. The following urge that the principles of the law of libel should be applied: Seelman, Law of Libel and Slander (chap. I, ¶ 7); Zollman, Law of the Air ([1927] § 195, p. 125); Vold, The Basis for Liability for Defamation by Radio (19 Minn. L. R. 611–660); Note (81 U. of Pa. L. Rev. 228). Most, if not all, of their conclusions are based upon the argument that radio defamation is similar to libel because of the " mischief " which such defamation can do in view of the large number of persons hearing a broadcast. Other authors, feeling, perhaps, that the distinction between libel and slander has outlived its historical significance and usefulness, have urged that both be amalgamated into one tort. (Veeder, History and

Theory of the Law of Defamation, 4 Col. L. Rev. 33; Huston, Liability of Broadcasting Companies, 12 Ore. L. Rev. 149; Haley, Law on Radio Programs, 5 George Wash. L. Rev. 157.)

In Sprague, Freedom of the Air (8 Air L. Rev. 30–49 [1937]), the author, after a full discussion of the entire subject, came to the following conclusion: " It is believed that as long as a distinction exists between libel and slander all radio defamation should be deemed slander and not libel whether the speaker reads from a manuscript or speaks extemporaneously or from memory, having previously memorized his speech."

Another approach suggested has been legislative action (W. J. Davis, Radio Law [1929], p. 104). This has been resorted to in some States. In Oregon (Laws of 1931, chap. 366) and Washington (Laws of 1935, chap. 117) defamation over the radio has been defined as libelous, while in California (Statutes [1929], chap. 682), Illinois (Smith-Hurd Rev. St. Ill. [1933], chap. 126, §§ 4–6, p. 2744), and North Dakota (Laws of 1929, chap. 117), radio defamation is declared to be slander.

However, our courts cannot legislate to eradicate the long-established distinction between libel and slander. As CARDOZO, Ch. J., said in *Ostrowe* v. *Lee* (256 N. Y. 36, p. 39): " The schism in the law of defamation between the older wrong of slander and the newer one of libel is not the product of mere accident. (Veeder, The History of the Law of Defamation, vol. 3; Essays in Anglo-American Legal History, 459, 461, 467, 468, 471; Fisher, The History of the Law of Libel, 10 Law Review Quarterly, 158; 1 Street, Foundations of Legal Liability, pp. 291, 292; 8 Holdsworth, History of English Law, p. 365.) It has its genesis in evils which the years have not erased. Many things that are defamatory may be said with impunity through the medium of speech. Not so, however, when speech is caught upon the wing and transmuted into print. *What gives the sting to the writing is its permanence of form.* The spoken word dissolves, but the written one abides and ' perpetuates the scandal.' (Harman and Delany, Fitzgibbon, 253; Veeder, *supra*, p. 472; Street, *supra*, p. 294.) "

It is manifest that not only should the " mischief " aspect of the distinction between libel and slander be considered, but the element of " permanence of form " as well. Libel has always been considered as written, and slander as spoken, defamation. (Pollock, Law of Torts [13th ed. 1929], p. 242; Odgers, Libel and Slander [6th ed. 1921], pp. 6, 7.) The broadcasting over the radio of an extemporaneous speech is no different in principle from the delivery of the same speech over an amplifier to a vast audience in a stadium. both methods involve use of the spoken word, and if the utterances are defamatory they may be equally damaging in nature. The

extent of the damage might obviously depend upon the number of persons hearing the defamation in either case.

Since the words complained of in this action were not contained in the script, it is not necessary to decide whether a different ruling would follow in a case where, as in the *Sorenson* case (*supra*), the defamatory matter is read from a prepared manuscript. Perhaps in such a case the analogies of the cases holding that reading from a defamatory letter was libel would apply. The extemporaneous interpolations by the defendant in this case, if actionable as defamation at all, must be considered as slander.

The defamatory material alleged in the complaint herein is not slanderous *per se*. There is an absence of any allegation of special damage. Hence the complaint is defective. Moreover, the allegations of the complaint are insufficient, because they fail to set forth the exact words of defamation claimed to have been used by the defendant. (*Crowell* v. *Schneider*, 165 App. Div. 690; *Durante* v. *Contanti*, 130 Misc. 632; *Battersby* v. *Collier*, 34 App. Div. 347; *Lyons* v. *Scriber*, 174 N. Y. Supp. 332.)

The motion is granted and the complaint is dismissed, with leave to the plaintiff to serve an amended complaint within twenty days after service of a copy of the order to be entered herein, with notice of entry. Settle order.