[File No. 6747]

JALMER B. STAFNEY, Respondent, v. STANDARD OIL COMPANY, a Corporation, and R. H. Dodd, Appellants.

(299 NW 582, 136 ALR 535)

Opinion filed July 30, 1941.

*Murphy, Toner & Kilgore,* for appellants.

*Chas. A. Lyche,* for respondent.

174

Burr, Ch. J.   The defendants appeal from an order granting a new trial.

The plaintiff seeks to recover damages for alleged libel.   He was an employee of the defendant company, and alleges that on or about April 24, 1939, the defendants published and circulated, "under the false and malicious pretense of making a legal report, the false, scandalous, malicious, defamatory and libelous matter, referred to and stated in a certain paper, filed with the Workmen's Compensation Bureau of the State of North Dakota, a copy of which is marked 'Exhibit A', hereto attached and made a part hereof."

Exhibit A is as follows:

## "NOTICE OF SEPARATION

"Social Security Number

"1. Name of Worker, *Jalmer Bernard Stafney*     501     01     6917
                       First Initial Last

"2. Date of Separation, *April 21, 1939*

"3. Received wages in lieu of notice from
    None     19     to     None     19
    Month     Date       Month     Date

"4. Reason for separation (Check one):
    (  ) Quit voluntarily without good cause.
    (X) Misconduct connected with work.
    (  ) Labor dispute.

"I certify that the information furnished is true and correct and that the above named worker was separated from employment on the date shown above and for the cause checked which the employer believes may disqualify him.

"Employer, *Standard Oil Company* Address, *910 So. Michigan Avenue*
                                                      Street

"Account No. *52–80–112*                   *Chicago, Illinois*
                                                       City

"Place of worker's employment if different from address of employer
    *Valley City, N. Dak.*

"Certified correct by: Name, *Standard Oil Company By: R. H. Dodd*

"Date, *April 24, 1939*     Title, *MANAGER (FARGO)*

## "NOTICE TO WORKER

"Take this notice to the nearest Employment Service Office immediately. See instructions on reverse side.

## "NORTH DAKOTA

## "UNEMPLOYMENT COMPENSATION DIVISION
## "WORKMEN'S COMPENSATION BUREAU

*"Falsification of audit report"*

He then alleges:

"That the viciousness and extent of said libelous publication has been greatly augmented and aggravated by the slanderous repetition thereof by the Defendants, their agents, servants, at all times, by the route of the so-called 'grapevine' communication and transmission, initiated and carried on by them."

The "Defendants admit that they filed with the Workmen's Compensation Bureau at Bismarck, North Dakota, Unemployment Compensation Division, a notice of the severance of relations between the plaintiff and the defendant Standard Oil Company which was in the form of Exhibit A attached to the complaint," and as defenses, allege the truth of the statement therein contained, and that such notice, Exhibit A, was filed "pursuant to the requirements of the law and was made and filed with the Workmen's Compensation Bureau of the State of North Dakota in good faith and without malice towards the plaintiff.

"Defendants further allege that at the time of the filing of the notice of separation with the Workmen's Compensation Bureau of the State of North Dakota, referred to in the complaint, and for a long time prior thereto, there was in full force and effect a statute passed by the Congress of the United States commonly known and referred to as the Social Security Act; and during said time there was also in full force and effect a statute of the State of North Dakota known as the Employment Compensation Law, being chapter 232 of the Session Laws of North Dakota for the year 1937, as amended by chapter 215 of the Session Laws of the State of North Dakota for the year 1939. That under the Federal and state statutes aforesaid the Federal agency in

charge of the administration of the said Federal Act,. known as the Social Security Board, and the Workmen's Compensation Bureau of the State of North Dakota, Unemployment Compensation Division, were authorized and empowered to adopt rules and regulations that might be proper and necessary for the administration of the laws of the United States and of the State of North Dakota in relation to the payment of unemployment compensation. That pursuant to the authority aforesaid the Federal and state agencies hereinbefore named adopted a rule, regulation and requirement for the filing by employers of a separation notice in the form of Exhibit A attached to the complaint in cases of the severance of relations between employers and employees. That it became the duty and obligation of the defendant company, under the laws and the rules and regulations promulgated as aforesaid, to file the said report in the form of Exhibit A attached to the complaint with the said Workmen's Compensation Bureau upon the severance of relations between the plaintiff and the defendant company on the 21st day of April 1939.

"That the filing of the notice of separation as aforesaid was a privileged communication under the law and the defendants are in no manner liable to the plaintiff in damages therefor."

The case was submitted to the jury, and a verdict returned for the defendants. Judgment was entered accordingly.

The plaintiff moved for a new trial, specifying six grounds—that the verdict was not justified by the evidence; that the court erred in admitting evidence over the objection of plaintiff; that the court erred in refusing to admit evidence offered by the plaintiff; that the court erred in its instructions to the jury; error in law occurring in the trial and excepted to by the plaintiff; and accident or surprise, which ordinary prudence could not guard against.

The alleged accident and surprise consists in the main of two grounds —First, that one of the counsel for the plaintiff had retired from the trial of the case, during the trial; and that the plaintiff had expected the defendant to have present at the trial an employee in its service station at Jud, North Dakota; and because of this, had not subpoenaed this witness.

In view of our holding regarding Exhibit A, the absence of the wit-

ness and the absence of one of the counsel for the plaintiff during a portion of the trial could not in any way affect the case.

A good deal of the time used in the trial, a proportionate portion of the charge to the jury, and a large portion of the briefs are devoted to the defense of truth so as to justify the execution of Exhibit A. The objection to the introduction of evidence offered by the defendant is based on the same theory, for it deals with the question of malice, and that some of the exhibits consisted of transcribed matter ostensibly taken in shorthand during some of the conferences between the plaintiff and the defendants prior to his discharge. None of that testimony on either side deals with the question of whether Exhibit A was absolutely privileged.

The trial court came to the conclusion that the verdict was not justified by the evidence, was contrary to law, and that there was error in the trial because of the admission of the transcribed notes and of testimony relating thereto. The court, therefore, granted the motion for a new trial.

Chapter 232 of the Session Laws of 1937, being the North Dakota Unemployment Compensation Law, created "an unemployment compensation division" in the Bureau, and transferred the "State Employment Service to the Workmen's Compensation Bureau as a Division thereof."

Section 11 (a) provides: "The Bureau shall have power and authority to adopt . . . such rules and regulations, . . . *require such reports* . . . as it deems necessary or suitable in the administration of this Act."

The Bureau accordingly prescribed and laid down the rule that "Each employing unit shall comply with the instructions or any report form issued by the Bureau and required to be returned to it. Such instructions shall have the force and effect of regulations issued pursuant to § 11 (f) of the North Dakota Unemployment Compensation Law." (Regulation 4.)

The form so prepared and issued consists of three sections separated by perforations. Each is headed "Notice of Separation." One section is required to be filed with the Workmen's Compensation Bureau;

one section retained by the employer; and the other delivered to the discharged employee.

Exhibit A is a copy of the latter section, and it will be noted that at subdivision 4, three reasons for separation are set forth in the printed blank. On the face of the three sections, the questions asked and information required are identical. On the back of the notices to be delivered to the employee and the Workmen's Compensation Bureau the instructions vary in accordance with the form, but on the portion to be filed by the employer with the Workmen's Compensation Bureau is a place for "Remarks." It is in this place for remarks the defendant inserted the phrase, "Falsification of audit report."

The employer is required to indicate by his X which one of these three grounds is the ground for discharge, and he is also authorized to make remarks with reference thereto, which evidently are for the purpose of amplification. Accordingly, the defendant placed an X mark opposite the line "Misconduct connected with work," and, as explanation thereof, typed into the notice the words, "Falsification of audit report."

The forms are so arranged that all of the information can be typed at the same operation by the use of carbon paper, and Exhibit A shows clearly the use of the carbon in the expression, "Falsification of audit report."

In the instructions to the worker, the Bureau informs him he may be disqualified "for benefits for one through five weeks (in addition to the Waiting Period) if the North Dakota Unemployment Compensation Division determines that your separation is due" to one or more of three causes, one of which is "Being discharged for misconduct in connection with work;" and these instructions notify him "In deciding whether you are disqualified the North Dakota Unemployment Compensation Division *will consider the statements made by you and your employer concerning the reason and circumstances of your separation.* The length of the disqualification will depend on the circumstances of your separation. *If you do not agree with the reason for leaving your job as given on this notice,* tell the interviewer in the local employment office why you think you lost your job."

Clearly, the information furnished by the defendant was of the char-

acter permitted, invited, and required by the Bureau; and from the language of the Act involved and the rules and regulations made by the Bureau under statutory authorization, the Federal act of which we take notice, the employer is compelled to furnish information under the penalty of fine or imprisonment, as § 17 of the Act provides: "Whoever violates any of the provisions of this Act shall be guilty of a misdemeanor and shall be punished by a fine of not more than One Hundred Dollars or by imprisonment for not longer than ninety days or both."

The plaintiff does not dispute but that the employer must comply with such requirements of the Bureau working in unison with Federal authorities administering the Federal statute, as set forth in the answer, but it is his claim Exhibit A is libelous, and that this was aggravated by repetition of the statements contained therein. This repetition is confined to the claim that by filing with the Workmen's Compensation Bureau the section of the form required to be filed there, defendants permitted a large number of the Bureau employees to see and read the same; and because the defendant retained in its office the section required to be retained, this copy was open to the inspection of a large number of defendants' employees, and thus the publication was extended. "Exhibit A" was not filed with the Bureau, nor retained by defendants; it is the portion required to be delivered to the discharged employee.

Despite the heated and inflammatory language found abundantly in the briefs, the situation involved is clear. The plaintiff had been in the employ of the Standard Oil Company, and the defendant Dodds was the manager of the Fargo territory. It is not necessary to set out in detail the evidence dealing with the facts prior to the issuance of Exhibit A.

The evidence shows that leading up to this discharge of the plaintiff was a series of investigations made by the defendants, which resulted in their decision to discharge the plaintiff. Upon such discharge, the defendants executed and filed the notices as required by law.

In the answer, and throughout the trial of the case, the defendant asserted two defenses—the truth of the statements made in Exhibit A,

and that Exhibit A was a privileged communication, as were also the other sections of the form required.

The distinction between underlying principles of absolute privilege and justification because of truth is set forth in Snively v. Record Pub. Co. 185 Cal 565, 198 P 1.

Section 4352 of the Compiled Laws of 1913 states: "Libel is a false and unprivileged publication by writing, printing, picture, effigy or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."

It will be noted that such publication, to be libel, must not only be false, but also unprivileged. Snively v. Record Pub. Co. (Cal) supra. Because of the well-known maxim in jurisprudence that for every wrong there is a remedy, the courts are loath to extend the scope of absolute privilege. Nevertheless, absolute privilege is based upon a doctrine of sound public policy. The reason for the bar has been determined so frequently and in so many jurisdictions as to become settled public policy. Hence it is the occasion which determines whether the communication is absolutely privileged or qualifiedly privileged. See Bolton v. Walker, 197 Mich 699, 164 NW 420, 423, Ann Cas 1918E, 1007; Coleman v. MacLennan, 78 Kan 711, 723, 98 P 281, 285, 20 LRA(NS) 361, 130 Am St Rep 390; Shultz v. Guldenstein, 144 Mich 636, 108 NW 96, 98. See also Garn v. Lockard, 108 Mich 196, 65 NW 764.

The law makes a clear distinction betwen the subject matter which is privileged and the communication itself. The subject matter may be privileged, while the communication otherwise may not be. National Cash Register Co. v. Salling (CCA 9th) 173 F 22.

"Occasion determines whether a publication is privileged, and, where occasion makes it privileged, the fact that the publication imputes to one the commission of a crime does not destroy the privilege." Madill v. Currie, 168 Mich 546, 134 NW 1004. See also Westerhouse v. De Witt, 215 Mich 295, 183 NW 711, 712, and Hoover v. Jordan, 27 Colo App 515, 150 P 333, 334.

"A privileged communication is one made:

"1. In the proper discharge of an official duty.

"2. In any legislative or judicial proceeding, *or in any other proceeding authorized by law.*

"3. In a communication without malice to a person interested therein by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information.

"4. By a fair and true report without malice of a judicial, legislative or other public official proceeding, or of anything said in the course thereof." Comp Laws 1913, § 4354.

An examination of this section discloses that subdivisions 1 and 2 are not affected by malice. The subjects therein mentioned are privileged without limitation. Reference to McCurdy v. Hughes, 63 ND 435, 248 NW 512, 87 ALR 683, shows we point out that proceedings under subdivision 2 of this § 4354 are absolutely privileged. Thus, in determining the status of Exhibit A, we must keep in mind some distinctions between communications qualifiedly privileged and those that are absolutely privileged. "Malice destroys the one and does not change the other." Andrews v. Gardiner, 224 NY 440, 446, 121 NE 341, 343, 2 ALR 1371.

Johnson v. Brown, 13 W Va 71, contains a lengthy and exhaustive discussion of the underlying principles differentiating matters of qualified privilege from those of absolute privilege, discussing the limitations of each class, the principle of public policy, the pertinency of the communication, and the relevancy of the alleged libelous matter to the case at bar. The decision cites and lists a large number of so-called leading cases and comments exhaustively and especially on the theory (p 130) that to hold there was a class of absolutely privileged communications has the effect of placing "a class of persons above the cognizance of law, and absolves them from the commands of justice." The opinion shows that the question of motive has nothing to do with the theory underlying the classification of certain communications as absolutely privileged. It places this class upon the broad foundation the administration of justice demands that in certain cases a party must be

permitted to speak with freedom and open mind, free from the probability that he may be charged with malice, or that he may "have to encounter the distress of harassing litigation."

Among absolutely privileged communications are those *made* in the discharge of a duty under express authority of law, by or *to heads of departments of the state* (Tanner v. Stevenson, 138 Ky 578, 128 SW 878, 881, 30 LRA(NS) 200), as "public service . . . requires complete immunity from being called to account for language used." Taber v. Aransas Harbor Terminal R. Co. (Tex Civ App) 219 SW 860, 861. It is true the Texas court refers specifically to language used in legislative bodies, in debates, language used by judges on the bench and witnesses, etc., but the rule holds good where the communication is such as is required by statute.

In Worthington v. Scribner, 109 Mass 487, 493, 12 Am Rep 736, a communication to the Treasury Department of the United States was held to be absolutely privileged on the ground of public policy; and this rule is upheld in Vogel v. Gruaz, 110 US 311, 28 L ed 158, 4 S Ct 12, as regards other departments.

Where the subject matter is absolutely privileged, the courts do not inquire into the motive. By reason of the occasion in which it is made, no remedy can be had in a civil action for libel. Cooley v. Galyon, 109 Tenn 1, 70 SW 607, 609, 60 LRA 139, 97 Am St Rep 823. See also Lea v. White, 4 Sneed (Tenn) 111, 115.

In Burgess v. Turle & Co. 155 Minn 479, 193 NW 945, the supreme court of Minnesota was construing the effect of the statute of North Dakota requiring notice of cancellation of a contract to purchase land to be published in a newspaper, when personal service could not be had upon the vendee in the state. The notice was published as required, and in an action for libel, it was claimed the statements made therein were false and defamatory. The court held that the publication having been required by statute, was absolutely privileged, and would not support an action for libel, even though the publication was malicious and known to be false.

The supreme court of Wisconsin, in an early case laid down the rule that "an absolutely privileged communication is one in respect of which, by reason of the occasion upon which it is made, no remedy

184

can be had in a civil action of slander or libel." Noonan v. Orton, 32 Wis 106, 111. See also Keeley v. Great Northern R. Co. 156 Wis 181, 145 NW 664, LRA1915C, 986; Hollis v. Meux, 69 Cal 625, 11 P 248, 58 Am Rep 574; Gosewisch v. Doran, 161 Cal 511, 119 P 656, Ann Cas 1913D, 442; Duncan v. Atchison, T. & S. F. R. Co. (CCA 9th) 72 F 808.

In Peterson v. Cleaver, 105 Neb 438, 441, 181 NW 187, 189, 15 ALR 447, the court quotes with approval from Townsend on Slander & Libel, 4th ed § 209, showing that an absolutely privileged communication is one "in respect of which, by reason of the occasion by which it is made, no remedy can be had in a civil action for slander or libel." In such case no one may inquire into whether the utterer was actuated by malice. Hollis v. Meux, 69 Cal 625, 11 P 248, 58 Am Rep 574, supra; Sebree v. Thompson, 126 Ky 223, 103 SW 374, 375, 11 LRA (NS) 723, 15 Ann Cas 770. See also Spencer v. Looney, 116 Va 767, 82 SE 745, 747, showing this is based upon public policy.

The occasion, however, may afford absolute privilege, and yet the communication be not pertinent to the occasion. If pertinent, however, there is no liability, no matter how false or malicious the statements employed may be. This rule is noted in Lauder v. Jones, 13 ND 525, 553, 101 NW 907, 917. See also Carpenter v. Grimes Pass Placer Min. Co. 19 Idaho 384, 114 P 42; Rosenberg v. Dworetsky, 139 App Div 517, 124 NYS 191; Miller v. Gust, 71 Wash 139, 127 P 845; Keeley v. Great Northern R. Co. 156 Wis 181, 145 NW 664, LRA 1915C, 986, supra. If the communication be not pertinent, it is not such a one as is included in subd 2. See Cooper v. Phipps, 24 Or 357, 33 P 985, 22 LRA 836; Gosewisch v. Doran, 161 Cal 511, 119 P 656, Ann Cas 1913D 442, supra; Carpenter v. Ashley, 148 Cal 422, 83 P 444, 7 Ann Cas 601; Shadden v. McElwee, 86 Tenn 146, 5 SW 602, 61 Am Rep 821.

As pointed out in Bolton v. Walker, 197 Mich 699, 164 NW 420, Ann Cas 1918E, 1007, where the occasion and attending circumstances are not in dispute, the question of privilege is for the court; and if the privilege attending the words spoken is absolute, the question of good faith and absence of malice are immaterial in an action based thereon. See also Carpenter v. Ashley, 148 Cal 422, 83 P 444, 7 Ann Cas 601,

supra; Sebree v. Thompson, 126 Ky 223, 103 SW 374, 11 LRA(NS) 723, 15 Ann Cas 770, supra.

Counsel for appellant says that there is no basis for the claim, that absolute privilege is attributed to communications made to the Workmen's Compensation Bureau.

A recourse to the second portion of subdivision 2 of § 4354 of the Compiled Laws already quoted shows that a communication made in a proceeding authorized by law is a privileged one—not qualifiedly privileged, but absolutely privileged. In Duncan v. Atchison, T. & S. F. R. Co. (CCA 9th) 72 F 808, 812, the court, in construing the California statute on libel, held that an answer in a proceeding before the Interstate Commerce Commission was "one made . . . in any legislative or judicial proceeding, or in any other official proceeding authorized by law," and, therefore, absolutely privileged. Our statute omits the term "official," making the exemption broader.

Such a communication as Exhibit A, as shown by the record, is one which is made in a "proceeding authorized by law," being a communication required by the statute. The record shows such communication conformed to the requirements and conditions laid down by the rules and regulations of the body requiring the communication.

The evidence in this case shows without dispute that Exhibit A was required by the Workmen's Compensation Bureau and the Social Security Act; that it was made out upon the forms that were furnished, and was required to be filed and delivered; that it indicated as required the reason which the employer had for discharging the employee; and it furnished in addition the reason given why he had been discharged for misconduct; and that all of this was pertinent to the occasion.

If a statute be applicable, then it is applicable in all essential particulars, for if it cannot be so applied, it should be applied in none. See Stroheim v. Deimel (CCA 7th) 77 F 802, 807.

The charge to the jury was very favorable to the plaintiff, in the light of the status of Exhibit A, for it submitted the question of a qualified privilege, the question of malice and of good faith on the part of the defendants, and instructed fully on this question. In fact, it is one of the grounds for the motion for the new trial that the court placed undue emphasis upon the question of qualified privilege.

In view of the undisputed testimony showing the nature of Exhibit A, why it was filed, and the compliance with the law governing the same, it is clear the plaintiff has no cause of action for libel, and, therefore, we do not inquire into the question of malice.

As the order for the new trial is based upon the theory that the evidence did not sustain the verdict, the introduction of the challenged evidence, which did not in any way affect the status of Exhibit A, and the supposed errors in the charge dealing with the question of qualified privilege, do not constitute reversible error, it must be clear that no new trial should have been granted. Under the facts of this case, a jury could return no other verdict than the one rendered. A new trial cannot alter the situation. The order granting the new trial is reversed, and the action ordered dismissed.

CHRISTIANSON, MORRIS, BURKE, and NUESSLE, JJ., concur.