Jerome EMO, Plaintiff and Respondent,

v.

**MILBANK MUTUAL INSURANCE COM-PANY, Defendant and Appellant.**

Civ. No. 8652.

Supreme Court of North Dakota.

Jan. 29, 1971.

Hjellum, Weiss, Nerison, Jukkala & Vinje, Jamestown, for defendant and appellant.

Ottmar & Nething, Jamestown, for plaintiff and respondent.

PAULSON, Judge.

This is an appeal from the judgment of the District Court of Stutsman County, North Dakota, in favor of Jerome Emo and against Milbank Mutual Insurance Company [hereinafter called Milbank], a foreign insurance corporation authorized to do business in North Dakota. . This is a libel action tried by the district court, sitting without a jury, and Milbank has appealed from the entire judgment, demanding a trial de novo. The facts are not in dispute. Eunice Southwick, an employee of an insurance company, secured an automobile insurance policy with Mil-

bank, through her employer, prior to her marriage to Jerome Emo. Subsequently, her employer notified Milbank of her change of name, and Milbank made a routine check of the insured's new husband, Jerome Emo. As a result of this investigation, which was conducted by another company, Milbank wrote to Mrs. Emo, as well as to her employer, and, giving no reason therefor, requested that she surrender her policy to Milbank. The reason for this requested surrender of her policy was not communicated to her employer, even though he had written to Milbank concerning the reason for its request.

On July 31, 1968, Milbank wrote a letter to Mrs. Emo and informed her that her policy was canceled as of August 30, 1968, and Milbank advised her that she had a right to inquire as to the reason for such cancellation. Mrs. Emo then wrote a letter to Milbank and requested the reason for the cancellation of her automobile insurance policy. Subsequently, Mrs. Emo received the following letter from Milbank:

"MILBANK MUTUAL
INSURANCE COMPANY
MILBANK, SOUTH DAKOTA 57252

[Letterhead design omitted]
"August 5, 1968

"Mrs. Jerome Emo
P.O.Box 916
Jamestown, North Dakota

"POLICY #620496
MRS. JEROME EMO

"I have received your letter of August 1 regarding the reasons for cancellation of the above mentioned policy. Under the provisions of House Bill #914 I am setting forth the same in the paragraph directly below.

"In checking our file I find that Jerome Emo was charged with stealing from the mail trains. I trust that this gives you the information you desire.

"[signed] David Dorsett
"David Dorsett
"Casualty Underwriting Department

"dp"

The information that Jerome Emo had been charged with the above-mentioned crime was entirely false. However, Milbank did not know that the information was false until after this action had been commenced. Thus no retraction statement was ever published.

The relevant North Dakota statutes are as follows:

14–02–01, N.D.C.C. *"General personal rights.*—Every person, subject to the qualifications and restrictions provided by law, has the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to his personal relations."

14–02–03, N.D.C.C. *" 'Civil libel' defined.*—Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."

14–02–05, N.D.C.C. *"Privileged communications.*—A privileged communication is one made:

"1. In the proper discharge of an official duty;

"2. In any legislative or judicial proceeding, or in any other proceeding authorized by law;

"3. In a communication, without malice, to a person interested therein by one who also is interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information; and

"4. By a fair and true report, without malice, of a judicial, legislative, or other public official proceeding, or of anything said in the course thereof.

"In the cases provided for in subsections 3 and 4 of this section, malice is not inferred from the communication or publication."

26–02–02, N.D.C.C. "'Insurer' and 'insured' defined.—The person who undertakes to indemnify another by a contract of insurance is called the insurer, and the person indemnified is called the insured."

26–02–04, N.D.C.C. "Insurable interest essential to insurance contract.—The sole object of insurance is the indemnity of the insured, and if the insured has no insurable interest, the contract is void."

26–02–33, N.D.C.C. "Automobile insurance—Cancellation—Notice and reasons therefor.—No contract of automobile liability insurance delivered or issued for delivery in this state and insuring a private passenger automobile which has been in effect for sixty days or more shall be terminated by cancellation except for nonpayment of premium, unless the insurer mails or delivers to the named insured at the address shown in the policy, a notice in writing at least thirty days prior to the effective date of cancellation of the intent of the insurer to cancel the insured's policy. Said notice shall contain or be accompanied by a statement that upon written request of the named insured mailed or delivered to the insurer not less than ten days prior to the effective date of cancellation or nonrenewal, the insurer will specify the reason or reasons for such cancellation or nonrenewal."

26–02–35, N.D.C.C. "Nonliability of parties.—The specific reason for cancellation or nonrenewal which is furnished to the insured, shall not constitute grounds for any cause of action against the insurer or his authorized representative, or its agents or employees, or any firm, person or corporation who in good faith furnishes to the insurer the information upon which the reasons for cancellation or nonrenewal are based."

26–07–14, N.D.C.C. "Additional grounds for revocation of authority of foreign company—Procedure—Effect of revocation.—The commissioner of insurance shall revoke or suspend all certificates of authority granted to a foreign insurance company or to its agents, and shall cause notification thereof to be published once in each week for three successive weeks in some newspaper published at the seat of government, if, upon examination or other evidence, he is of the opinion that:

"1. * * *

"2. Such company has failed to comply with any provision of the laws of this state applicable thereto;

"3. Such company, or any officer or agent thereof, has refused to submit to examination or to perform any legal obligation imposed thereon; * * *."

In the case at bar there are three issues:

1. Was the letter published?

2. Was the letter a privileged communication, either absolute or qualified?

3. Was the information contained therein libelous per se?

■ There must be a publication for libel to be actionable. Allegedly defamatory matter communicated to a third party is a publication. Dvorak v. Kuhn, 175 N.W. 2d 697 (N.D.1970). In paragraph 3 of the syllabus for Rickbeil v. Grafton Deaconess Hospital, 74 N.D. 525, 23 N.W.2d 247 (1946), this court held that a libel is published when a libeler intentionally allows

it to be read by one other than the defamant. Thus, in the case at bar, there was a publication to Mrs. Emo, the addressee of the letter, who was a third party, and a party other than the defamed.

■ In paragraph 3 of the syllabus in Murphy v. Farmers Educational & Cooperative Union, 72 N.W.2d 636 (N.D. 1955), and in paragraph 3 of the syllabus in Ellsworth v. Martindale-Hubbell Law Directory, 66 N.D. 578, 268 N.W. 400 (1936), this court defined libel per se as follows:

> "A defamatory publication is libelous per se when without the aid of innuendo it must be presumed to expose the plaintiff to hatred, contempt, ridicule, or obloquy, or cause him to be shunned or avoided, or have a tendency to injure him in his occupation."

Milbank has cited a North Dakota case, Stafney v. Standard Oil Co., 71 N.D. 170, 299 N.W. 582 (1941), and has attempted to place it on all fours with the instant case. In the *Stafney* case, *supra*, Mr. Stafney sought to recover damages for an alleged libel. He alleged that Standard Oil Company had filed a statement with the North Dakota Workmen's Compensation Bureau as required by law; and he further alleged that this statement contained libelous material in its reference to Mr. Stafney. The jury returned a verdict in favor of Standard Oil Company, and Mr. Stafney made a motion for a new trial. Standard Oil Company appealed from the order granting the motion for a new trial. This Court reversed the order granting the new trial and ordered the action dismissed. The first six paragraphs of the syllabus of Stafney v. Standard Oil Co., *supra*, state:

> "1. The occasion and circumstances under which a communication said to be libelous is made determine whether such publication is privileged.

> "2. A communication required to be made, and made in a proceeding author-

ized by law, is a privileged communication.

> "3. Where such privileged communication is made to a department of the state in the discharge of a duty under express requirement of law, such communication, if pertinent to the issue, is absolutely privileged. .

> "4. An absolutely privileged communication is one in respect of which, by reason of the occasion upon which it is made, no remedy can be had in a civil action of libel.

> "5. In the case of such an absolutely privileged communication, no one may inquire as to whether the utterer was actuated by malice.

> "6. Where the occasion and the attending circumstances under which such communication is made are not in dispute, the question of whether the communication is absolutely privileged is for the court to determine."

Certainly paragraphs 1, 2, 4, and 6 of the syllabus in Stafney v. Standard Oil Co., *supra*, are applicable to the case at bar in that they define absolute privilege and qualified privilege, and state that the occasion and circumstances are determinative. It is the court's prerogative to determine whether or not a communication is privileged. However, thereafter the *Stafney* decision can be distinguished from the case at bar on two primary points. The court in the *Stafney* decision proceeded under a special statute pertaining to workmen's compensation law and then applied subsection 2 of section 4354, Comp.Laws 1913 [14–02–05, N.D.C.C.], which defines absolute privileged communications. Surely an act required by law expressly dealing with a department of state cannot be equated to the facts of the case at bar.

■ Black's Law Dictionary (4th ed. 1951), defines "proceeding", in pertinent part, to be:

> "In a general sense, the form and manner of conducting juridical business be-

fore a court or judicial officer; regular and orderly progress in form of law; including all possible steps in an action from its commencement to the execution of judgment.",

citing Nelson v. Dunn, 56 Ind.App. 645, 104 N.E. 45; and Lait v. Sears, 226 Mass. 119, 115 N.E. 247, 248, in which, referring to the term "proceeding", they hold:

"The term is properly applicable, in a legal sense, only to judicial acts before some judicial tribunal."

Our Legislature, in § 14–02–05(2), N.D. C.C., adds "legislative" and "or in any other proceeding authorized by law" to judicial proceeding as defined by Black's Law Dictionary, *supra*. Thus, this would be a broadening of the defined term; but certainly the word "proceeding", even though given a liberal definition, would appear necessarily to include some form of governmental process. Correspondence, whether it be required under statute or not, by a private foreign corporation with one of its clients or customers, does not constitute a "proceeding" within the most liberal scope of such definition. The letter written to Mrs. Emo by Milbank was not a proceeding within the purview of § 14–02–05, N.D.C.C., or of the holding in the *Stafney* case, *supra*.

▆▆▆ If a communication is absolutely privileged under § 14–02–05, N.D.C.C., no remedy is provided for damages in a civil action for slander or libel. Even the existence of express malice does not destroy the privilege. Farmers Educational & Coop. Union of America, North Dakota Division v. WDAY, Inc., 89 N.W.2d 102 (N.D. 1958), aff'd 360 U.S. 525, 79 S.Ct. 1302, 3 L.Ed.2d 1407; 53 C.J.S. Libel and Slander § 88, p. 143. However, in the instant case, the act of writing and publishing the letter to Mrs. Emo by Milbank was not a "proceeding" within the meaning of § 14–02–05, N.D.C.C., and if there were any privilege it would be a qualified privileged communication. There is no civil liability in a qualified privileged communication

without actual malice. A qualified privileged communication is usually a good-faith communication wherein the author of the communication has an interest or duty which is public, personal, or private; either legal, judicial, political, moral, or social; and is made to a person having a corresponding duty or interest. Farmers Educational & Coop. Union of America, North Dakota Division v. WDAY, Inc., *supra*; 53 C.J.S. Libel and Slander § 89, pp. 143–145. Thus it is necessary to determine whether the defamatory statement made by Milbank concerning Jerome Emo was an irrelevant statement or whether it was within the realm of a privileged communication to Mrs. Emo. Even if a qualified privileged communication exists, the statement may be irrelevant or so extraneous or so intemperate as to lose its qualified privileged character. Vojack v. Jensen, 161 N.W.2d 100 (Iowa 1968); Children v. Shinn, 168 Iowa 531, 150 N.W. 864 (1915); 50 Am. Jur.2d Libel and Slander §§ 279, 280, 282, pp. 798–800. *Cf.* State v. Haider, 150 N.W.2d 71 (N.D.1967).

In Bartels v. Retail Credit Company, 175 N.W.2d 292 (Neb.1967), in paragraphs 2, 3, and 4 of the syllabus, the Nebraska court held:

"2. A publication loses its character as privileged and is actionable if it is motivated by express or actual malice or if there is such a gross disregard of the rights of the person injured as is equivalent to malice in fact.

"3. To be privileged, a mercantile agency's representatives must act impartially and in good faith, carefully evaluating all information before disseminating any defamatory statements to its subscribers.

"4. This requires them to make a thorough and complete investigation and to fully and accurately report information only from reliable sources."

After reviewing the record, it cannot be said that Milbank and its investigatory agents used good faith; nor did they make

a complete and thorough investigation. It is quite apparent that Milbank grossly disregarded the rights of the person injured. The statement that Milbank made was one of the most serious kind, in terms of social ostracism, and the statement had no relevancy as to whether or not the defamed was a poor insurance risk as a motor vehicle operator. The imputed crime was not germane to violations of common driving practices.

█ Unquestionably, publication to one's spouse of defamatory matter is sufficient to give rise to a cause of action for libel or slander. Bonkowski v. Arlan's Department Store, 12 Mich.App. 88, 162 N.W.2d 347 (1968), 383 Mich. 90, 174 N.W.2d 765 (1970); Linck v. Driscoll, 13 Ind.App. 279, 41 N.E. 463 (1895); Prosser, Torts 3rd Ed. HB (1964), p. 804. The Michigan Supreme Court, in Bonkowski v. Arlan's Department Store, *supra* 174 N.W.2d at 767, said:

> "We may fairly presume that, in the uneven course of marital life, the humiliation suffered by a plaintiff in like circumstances is more likely to be recalled— and brooded over—than if the event in question had occurred in the presence of strangers then and strangers forever."

█ Section 26–02–35, N.D.C.C., requires that the insurer advise the insured of the reason for cancellation. Milbank therefore proceeded accordingly. However, the insurer cannot receive immunity for gross misconduct. The insurer under this statute cannot publish matter libelous to third parties unless such information is relevant, necessary, or inseparably connected with the qualified privileged communication. Farmers Educational & Coop. Union of America, North Dakota Division v. WDAY, Inc., *supra*. There is no evidence that Jerome Emo was an insured as defined by § 26–02–02, N.D.C.C. Although the insurance policy is not a part of this record, assuming for the sake of argument

only that the policy contained an omnibus clause and that under that clause a policyholder's spouse would be covered by the insurance policy, we think that is an insufficient connection between the insured and her spouse or between the insurance company and the insured's spouse to permit the insurance company to libel the insured's spouse. If we were to find the insurance company privileged to libel the insured's spouse because of the company's responsibility under the omnibus clause, where would that privilege end? Could it not thus be argued that the insurance company is privileged to libel persons other than the insured's spouse who might qualify for coverage under the omnibus clause? Such an extensive license to libel we cannot attribute to the Legislature. It is our view that the Legislature intended to protect an insurance company from libel actions brought on behalf of the policyholder and none other. Had the Legislature intended otherwise, the language would have been, and we think should have been, much more explicit.

As this Court has not in the past condoned libel, we would think it a step backwards to do so at this time.

In Rickbeil v. Grafton Deaconess Hospital and Albert G. Tverberg, 74 N.D. 525, 23 N.W.2d 247, a case decided in 1946, the defendants asserted, among other things, that there was no evidence of publication and that publication is an essential element of libel. In *Rickbeil, supra*, defendant Tverberg was the secretary of the Board of Trustees of the defendant hospital and, as such, had charge of the collection of accounts for the hospital. As such secretary and collector he dictated the letter containing the libelous matter to his stenographer, who took the dictation in shorthand, transcribed her notes, typed the letter, and sent it by registered mail to the plaintiff, who received it.

In holding that the letter was published, this Court said, in Rickbeil v. Grafton

Deaconess Hospital, *supra* 23 N.W.2d at 255–256:

"To hold that a stenographer is not an individual but a mere cog in the machine because of modern development necessitated by the changes in business methods is a derogation of human personality, and not in harmony with the modern conception of the dignity of labor. As stated in Gambrill v. Schooley, *supra*, 93 Md. 48, 48 A. [730] 731, 'Neither the prevalence of any business customs or methods, nor the pressure of business which compels resort to stenographic assistance, can make that legal which is illegal, nor make that innocent which would otherwise be actionable.'

"A man's personal right to be free from defamation of character as specified in sec. 14–0201, Rev.Code, is surely not dependent upon the supposed cold necessities of business, so that to sacrifice rights of individual to supposed business necessity becomes controlling in the determining of human relations. The personal rights of the individual to be free from defamation of character are paramount to any exigencies of business and the stenographer who types and the office-boy who copies are individuals with personalities even if mere employees, whether the relationship of master and servant exists or whether all parties concerned are employees of an employer common to each.

"In Locke v. Gibbons, 164 Misc. 877, 299 N.Y.S. 188, it is said: 'Courts can not legislate to eradicate long-established distinction between libel and slander'; and then distinguishes the terms by stating, ' "Libel" is written, and "slander" spoken, defamation.' Why should the courts now legislate with reference to stenographers and reduce them from persons to machines because of the exigencies of business?

"The question of privilege with reference to the position of the stenographer seems to be inextricably mixed in the thinking of the courts so as to reduce her status.

"However, if one were looking for the 'modern trend' with reference to 'the third person' the Restatement of the Law of Torts may be held to show the well-defined rules governing such a matter. In sec. 577 we find: 'Publication of defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed.' This is followed by these 'comments' a, b, e, f, h. '(a) A publication of the defamatory matter is essential to liability. (b) To constitute a publication it is necessary that the defamatory matter be communicated to some one other than the person defamed; (e) The fact that the defamatory matter is communicated *to an agent of the defamer* (italics ours) does not prevent it from being a publication sufficient to constitute actionable defamation. (f) One is liable for the publication of defamation by a third person whom as his servant, agent, or otherwise he directs or procures to publish defamatory matter. (h) The dictation of a defamatory letter to a stenographer who takes shorthand notes thereon is itself a publication of a libel by the person dictating the letter even though the notes are never transcribed nor read by the stenographer or any other person. As to the conditions under which such a dictation is privileged see Sec. 604.' This sec. 604 deals with defensive matter."

It is our view that the Legislature had in mind this type of publication in enacting § 26–02–35, N.D.C.C., and that the Legislature therefore intended to protect the insurance company from action that otherwise could have been brought by the policyholder who was libeled by the explanation for the cancellation required by the statute.

■ In the instant case, the defamatory statement maintains the status of libel per se and general damages are presumed.

For the reasons stated in the opinion, the judgment of the trial court is affirmed.

STRUTZ, C. J., and ERICKSTAD, J., concur.

TEIGEN, Judge (dissenting).

I dissent on the ground that our laws recognize the communication as absolutely privileged and, as such, it is not within the rules imposing liability for defamation.

Section 26–02–33, N.D.C.C., prohibits the insurer from cancelling an automobile liability insurance policy which has been in effect for sixty or more days unless the insurer mails or delivers to the named insured a notice, in writing, at least thirty days prior to the effective date of cancellation of the intent of the insurer to cancel the insured's policy. The statute makes it mandatory upon the insurer to contain in its notice of intent to cancel, or to accompany with the notice, a statement advising the named insured "that upon written request of the named insured mailed or delivered to the insurer not less than ten days prior to the effective date of cancellation or nonrenewal, the insurer will specify the reason or reasons for such cancellation or nonrenewal." Section 26–02–35, N.D.C.C., grants the insurer absolute privilege when the occasion arises whereby it must specify the reason or reasons for such cancellation. This nonliability section provides:

"The specific reason for cancellation or nonrenewal which is furnished to the insured, shall not constitute grounds for any cause of action against the insurer * * *"

The majority in construing this section hold:

"The insurer under this statute cannot publish matter libelous to third parties unless such information is relevant, necessary, or inseparably connected with the qualified privileged communication."

And they also hold:

"It is our view that the Legislature intended to protect an insurance company from libel actions brought on behalf of the policyholder and none other."

They state in their opinion:

"Had the Legislature intended otherwise, the language would have been, and we think should have been, much more explicit."

In arriving at their conclusion the majority have assumed, for the purpose of deciding the issue, that the policy contains an omnibus clause which made the plaintiff, as the husband of the named insured, an additional insured under the policy. I agree with the assumption but do not agree with the conclusion arrived at by the majority.

The nonliability statute states that the *"specific reason * * * shall not* constitute grounds for *any* cause of action against the insurer."* [Emphasis added.] It grants an absolute privilege. The named insured made a timely request in writing asking the insurer to specify the reason for the cancellation. The insurer, having a statutory duty to respond, mailed to the named insured the letter in issue here. The letter names the plaintiff as the reason for the cancellation. He became an additional insured under the omnibus clause of the policy when he married the named insured. The insurer believed that he did not qualify for the coverage and, therefore, decided to cancel the insurance. Under the circumstances, it was necessary for the insurer to disclose to the named insured the identity of that person in order that the communication specifying the reason for the cancellation would comply with the requirements of the law and have value and force. Therefore, the privilege must extend to cover the statement contained in the communication even though the plaintiff's name was stated therein.

"Where the making of a defamatory statement concerning a third person in

an otherwise privileged communication is necessary in order that the communication may be made of value and force, the privilege has been held to extend to cover such a statement, although the third person's name is expressly mentioned." 50 Am.Jur.2d Libel and Slander, Sec. 281.

In support of their conclusion that the Legislature intended to protect the insurer against a libel action by the "named insured and none other," the majority have cited Rickbeil v. Grafton Deaconess Hospital, 74 N.D. 525, 23 N.W.2d 247 (1946). They point out that the Legislature must have had in mind the type of publication that occurred in *Rickbeil* in enacting Section 26-02-35, N.D.C.C. I think that the construction placed upon the statute by the majority is too narrow. The language of the statute is much broader. The statute states the "specific reason" furnished shall not constitute a cause of action against the insurer. No cause of action can arise if the statutes on cancellation are followed. The resulting injury, if any, is damnum absque injuria. There is no claim that the statutes were not followed here; in fact, it is clear from the record that the procedure authorized was followed. The statute does not limit the exemption to any particular cause of action or any particular claimant. Had the Legislature intended to limit the exemption to an action brought by the named insured, it could easily have said so. It is the "specific reason" furnished which does not constitute grounds for cause of action against the insurer. It is the "specific reason" furnished to the insurer upon which the plaintiff, in this case, premises his claim of libel. The specific reason, of course, must be pertinent to the occasion. In this case, however, there is no claim that the reason given was not pertinent to the occasion, that the statutes were not followed, or that there was negligence or malice. The plaintiff's claim is based on the fact that the reason given is false and that, therefore, the communication defamed the plaintiff.

It is my opinion that where an action for libel is brought against an insurer, based on the reason communicated for the cancellation of an automobile liability insurance policy, Section 26-02-35, N.D.C.C., permits a defense of absolute privilege to the insurer when it shows that it complied with the mandate of the statute requiring it to specify to the named insured the reason or reasons for the cancellation, which absolute privilege extends to cover the publication of such reason although a third person's name is expressly mentioned therein and the reason is pertinent to the occasion.

I also think that the majority are in error in holding that Section 14-02-05, subsec. 2, N.D.C.C., which provides for an absolute privilege, is not available to the defendant insurer in this case. I also disagree with the majority in holding that Stafney v. Standard Oil Co., 71 N.D. 170, 299 N.W. 582, 136 A.L.R. 535, is not applicable. Paragraph number 2 of the syllabus in *Stafney* states:

"A communication required to be made, and made in a proceeding authorized by law, is a privileged communication."

This paragraph of the syllabus in *Stafney* is based on Section 14-02-05, subsec. 2, N.D.C.C., which provides that a privileged communication is one made "in any legislative or judicial proceeding, or in any other proceeding authorized by law". This proceeding was initiated by the named insured. under Section 26-02-33, N.D.C.C., when she submitted a written request to the insurer asking that it specify the reason for the cancellation. Under that statute the insurer was then required to answer the written request, specifying the reason or reasons for such cancellation. The majority have found that the act of writing and publishing the letter to Mrs. Emo by Milbank was not a proceeding within the meaning of Section 14-02-05, N.D.C.C., and "if there were any privilege it would be a qualified privileged communication." The majority admit that the language of the statute which adds to judicial "legisla-

tive", and "or in any other proceeding authorized by law" constitutes a broadening of the term "proceeding", but find that even though given a liberal definition it would appear necessarily to include "some form of governmental process." No citation is given to support this conclusion.

Section 1–02–02, N.D.C.C., provides:

"Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, but any words explained in this code are to be understood as thus explained."

Section 1–02–03, N.D.C.C., provides:

"Words and phrases shall be construed according to the context and the rules of grammar and the approved usage of the language. * * *"

It then makes an exception of technical words and phrases which have acquired a peculiar and appropriate meaning in law or as defined by statute. There are no such words contained in Section 14–02–05, N.D.C.C. I agree with the majority that, ordinarily, in law, a proceeding has reference to a judicial process. However, our Legislature, in adopting the statute in question, adds legislative proceedings and then broadens the word "proceeding" to include "any other proceeding authorized by law." The Legislature has, by Section 26–02–33, N.D.C.C., provided a procedure whereby a named insured can compel the insurer to specify the reason or reasons for the cancellation of an automobile liability insurance policy. In this case the named insured initiated the procedure by a written request which made it mandatory that the insurer specify the reason or reasons for the cancellation. Section 26–07–14, N.D.C.C., cited by the majority in their opinion, authorizes the commissioner of insurance to revoke or suspend the certificates of authority granted to Milbank, a foreign insurance company, if it fails to comply with any of the provisions of the law of this state applicable to it. Further, had it failed to specify after the request was made, there

would have existed the possibility that the cancellation would be ineffective and the insurer might have been subjected to liability in the event a claim arose after the termination date stated in the notice.

It is elementary that in construing the statutory provision the words are to be given their plain, ordinary and commonly understood meaning. State ex rel. Lashkowitz v. Cass County, 158 N.W.2d 687 (N.D. 1968); Hill v. Schroeder, 156 N.W.2d 695–699 (N.D.1968); Verry v. Trenbeath, 148 N.W.2d 567 (N.D.1967); Cowl v. Wentz, 107 N.W.2d 697 (N.D.1961); Bronson v. Johnson, 76 N.D. 122, 33 N.W.2d 819 (1948).

"Proceeding" is a comprehensive term meaning the action of proceeding—a particular step or series of steps adopted for accomplishing something. See Webster's Third New International Dictionary. This is the dictionary definition as well as the meaning of the term in common parlance. Thus, when the Legislature defined a privileged communication as one made in any legislative or judicial proceeding, "or in any other proceeding authorized by law," it broadened the meaning of the term "proceeding" to include any particular step or series of steps prescribed by law for accomplishing something authorized by law. The statute has clearly set forth the steps required to cancel an automobile liability insurance policy for reasons other than the nonpayment of the premium, and the communication here in issue was written and sent to the named insured in compliance with the mandatory provisions of the statute and constituted one step in the proceedings. This, in my opinion, was a "proceeding authorized by law" and the defamatory communication comes within the definition of an absolute privilege as defined by Section 14–02–05, N.D.C.C.

For the reasons aforesaid I would reverse the judgment.

KNUDSON, J., concurs.