WILLIAM B. WHEATON v. LUTHER BEECHER.

[See 66 Mich. 307; 70 Id. 363.]

*Libel and slander—Publication—Justification—Rumors.*

1. " Publication," in its ordinary and popular sense, has a narrower meaning than its technical legal meaning.

So *held*, where, on the trial of a libel suit, a newspaper reporter, after having testified fully to his interview with the defendant, in which the offensive remarks were drawn out by his own inquiries, which conversation he subsequently reduced to writing, and handed in for publication without showing it to the defendant, and without his request or procurement, unless a desire for it could be inferred from the circumstances of the interview itself, was asked if the defendant, to the knowledge of the witness, had anything to do with such publication, and answered " not to my knowledge," which answer was objected to because the term " publication " embraces the entire means whereby libelous matter is made public, and includes a result which should be left to the jury; and it is held that the question must have been fairly understood as relating to the procurement of publication or printing in the newspaper, and was a very proper one.

2. Where in a libel suit, in which the defendant denied any responsibility for the publication of the libel, and also gave a general notice of justification, the jury were instructed that, if the defendant was in any way responsible for such publication, plaintiff was entitled to recover damages, unless it was justified, which could not be unless the facts were proven true in the

sense alleged in the declaration, and that rumors and other things, however much believed and relied on, could under no circumstances exonerate from liability, and could only reduce the amount of the damages, and the jury found a verdict for the defendant of no cause of action, the reception of evidence of such rumors, under objection, becomes of no account, it not being seen how, under the charge, they bore on the result.

3. Where, in a libel suit, the facts put in issue consist of separate items of libelous meaning, all of which are not proved true, the plaintiff is entitled to recover something, either nominal or substantial, according to circumstances; citing *Atkinson v. Free Press*, 46 Mich. 347. But, if the charge is single, a failure to show every instance of conduct attempted to be shown will not prevent exoneration, if enough is shown to satisfy the jury that the charge is fully proved.

So *held*, where the libel charged, according to the inferences drawn from it, that the plaintiff was a man of fair-seeming exterior, but in fact rotten and corrupt, and unworthy of confidence, and the only thing put in view was the single issue as to plaintiff's general character for probity.

4. Under our practice of giving notice of defenses which at common law were specially pleaded, the statute (How. Stat. § 7776) does not make a notice of justification evidence of malice, or treat it as a republication of the libel, and no facts are put in issue except those declared on.

5. Where the pleadings in a libel suit simply put in issue the plaintiff's general character for probity, a notice of justification should be special, so as to inform the plaintiff of what he has to meet.

Error to Wayne. (Brevoort, J.) Argued January 21, 1890. Decided February 20, 1890.

Case for libel. Plaintiff brings error. Affirmed. The facts are stated in the opinion, and in 66 Mich. 307.

*E. H. Sellers (William P. Wells*, of counsel), for appellant, contended:

1. In support of the proposition that, where justification is pleaded, evidence of rumors is inadmissible for any purpose, counsel cited *Proctor v. Houghtaling*, 37 Mich. 45, 46; Odgers, Lib. & Sland. 304, and cases cited; *Peterson v. Morgan*, 116 Mass. 350, and cases cited; *Clark v. Brown*, Id. 504-509; *McLaughlin v.*

*Cowley,* 131 Id. 70; *Alderman v. French,* 1 Pick. 1, 17, 18, and cases cited; *Whittemore v. Weiss,* 33 Mich. 348.

*John Atkinson* and *Henry M. Cheever,* for defendant, contended for the doctrine stated in the opinion.

CAMPBELL, J. This case was before us, and reported in 66 Mich. 307. It was there held the publication sued upon was actionable, and that there was some evidence tending to show publication. We need not repeat the facts there referred to.

Subsequently a notice of justification was put in, of a general character. Proofs were on a new trial received without objection, or at least without exception, which it is stated in the record had a tendency to show justification. The form of the notice is not, therefore, important upon the question whether evidence was receivable under it. It may have a bearing on another question. Evidence was also received, under objection, of rumors of various kinds, on which errors are alleged. The errors assigned relate to the proof of publication, to the proof of discreditable rumors, to allowing certain contempt proceedings during the trial, and to errors in the charge given or refused. The jury found for defendant. It is altogether probable, from the very slight testimony on that point, that the verdict was based on Mr. Beecher's innocence of procuring the publication; and upon that question the facts were submitted to the jury under a charge to which some exception was taken. But, as it is possible other things were considered, we must look at the errors assigned on all the exceptions, so far as necessary.

The first assignment of error covers two answers allowed to be given,—one on cross-examination of a witness for plaintiff (who was the person that wrote and handed to to the newspaper the libel as it was printed), and one on the direct examination of defendant.

Mr. May was asked:

"Did Mr. Beecher, so far as your knowledge goes, have anything to do with the publication of that article?"

He answered: "Not to my knowledge."

Mr. Beecher was asked:

"Had you anything to do in any way, shape, or manner, with the publication of that article?"

He answered: "No."[1]  So far as Mr. Beecher is concerned, we can see no reason why the question and answer were not entirely pertinent and proper. The objection urged to Mr. May's testimony is that the term "publication" embraces the entire means whereby libelous matter is made public, and includes a result which should be left to the jury. This is somewhat nicely put, but we do not think it applies to the case. "Publication," in its ordinary and popular sense, has a narrower meaning than its technical legal meaning, and one which, in view of what the witness testified, was not calculated to mislead any one. He testified fully to his interview with Mr. Beecher in which the offensive remarks were drawn out by his own inquiries. He testified that he subsequently committed the conversation to writing, and handed it into the printing-office without showing it to Mr. Beecher, and without his request or procurement, unless a desire for it could be inferred from the circumstances of the interview itself. Having been fully examined on the facts, from which, so far as significant, the jury could draw their own conclusions, the question put must have been fairly understood as relating to the procurement of publication or printing in the newspaper, and was a very proper one. Even had it been ambiguous, it is hard to see why, with the con-

---

[1] Counsel for appellant cited Odgers, Libel & Sland. 154, and cases there cited.

text of the examination, it could have created any false impression.

The same criticism is made on a portion of the charge in which reference is made to the fact that there is no testimony that Beecher published, or caused to be published, the libel in question, but that of himself and May; that Beecher's testimony tends to prove he did not expect it to be published,—which it very clearly tends to show, and, if believed, shows conclusively. Referring to May's testimony, the court said Mr. May asked Beecher the question referred to in the article, but Beecher had nothing to do with reducing the same to writing, or with its publication. But the court presented to the jury, as the main issue, whether Beecher was responsible for causing it to be published, and gave the jury to understand they were themselves to pass on all the testimony. There can be no doubt that the remark in question referred to the actual writing, and the actual printing, and it is certain there was nothing to indicate that Beecher did anything except express himself in the conversation; and the jury could not have understood that the court meant to decide, or intimate any opinion on, what was so explicitly left to them as a question of fact.

The questions concerning rumors, and the errors alleged touching the contempt proceedings, do not appear to us as now important. The charge is very clear, to the effect that, if Mr. Beecher was in any way responsible for the publication of the libel, plaintiff was entitled to recover damages, unless it was justified, and that it could not be justified unless the facts were proven true in the sense alleged in the declaration. They were further told, in explicit and intelligible terms, that rumors or other things, however much believed and relied on, could under no circumstances exonerate from liability, and could only

reduce the amount of damages. There were only two things which, under the charge, could lead to a verdict for defendant. One was his innocence of complicity in the newspaper reproduction of his sentiments; the other was proof that what he said was true, in the sense given to it in the declaration. The jury found a verdict for the defendant entirely, and not one of nominal damages. They therefore found either that the libel was true, or that he was not guilty of giving it publicity in print or writing. The side issues become of no account, as we do not see how, under the charge, they bore on the result.

The only other question is whether there was error in not giving the sixth request, which was in these words:

"Unless every material item of the alleged defamation is established, the plaintiff can recover damages for so much as is not fully justified. The truth of one part cannot deprive him of his action for that which is not shown to be true. *Atkinson v. Free Press*, 46 Mich. 347."

That doctrine is true when there is anything to apply it to, but it has no application here. The libel here charges no specific facts at all. The libel merely charges, according to the inferences drawn from it, that plaintiff is a person of fair-seeming exterior; but in fact rotten and corrupt, and unworthy of confidence. The only thing it put in view was the single issue as to plaintiff's general character for probity. If the publication had not been denied, it is not difficult to see that proof of a single transaction might be as decisive on such a question as proof of many transactions, so that failure to prove all would in no way change the result. Under our practice of giving notice of defenses which at common law were specially pleaded, the statute does not make the notice evidence of malice, or treat it as a republication of the libel. How. Stat. § 7776. No facts are therefore put in issue except those declared on. If those consist of sepa-

rate items of libelous meaning, all which are not proved true entitle the plaintiff to recover something, either nominal or substantial, according to circumstances. But, if the charge is single, a failure to show every instance of conduct attempted to be shown will not prevent exoneration, if enough is shown to satisfy the jury that the charge is fully proved. In the present instance, the notice of justification does not appear to have been special, as in good practice it should have been, so as to inform plaintiff what he has to meet. But the trial was actually had on the issue it tendered, and it is not claimed that there was not testimony relevant under it. We are not informed what it was, and it does not concern the present legal result, which may not have been connected with it at all, and which is quite as consonant with an acquittal of complicity in the libel itself.

The judgment should be affirmed, with costs.

The other Justices concurred.