BONKOWSKI *v.* ARLAN'S DEPARTMENT STORE.

1. False Imprisonment—Torts—False Arrest.

   The tort of false arrest or unlawful arrest is a species of the common-law action for false imprisonment.

2. Same — Private Policeman — Agency — Responsibility — False Arrest.

   Defendant department store corporation *held*, to be responsible in damages for the tortious act of a private policeman, furnished under contract with private police protection service, in making false arrest of a suspected shoplifter, where the record shows that the apprehension of shoplifters was within the scope of the private policeman's authority, and

---

References for Points in Headnotes

[1] 32 Am Jur 2d, False Imprisonment §§ 1, 2.
[2] 32 Am Jur 2d, False Imprisonment §§ 44, 45, 47.
    Principal's liability for false arrest or imprisonment caused by agent or servant, 92 ALR2d 15.
[3, 7] 53 Am Jur, Trial §§ 539, 545.
[4] 32 Am Jur 2d, False Imprisonment § 108.
[5] 32 Am Jur 2d, False Imprisonment § 85.
[6] 32 Am Jur, Larceny § 45.
[8, 9] 32 Am Jur 2d, False Imprisonment §§ 47, 74.
[10] 33 Am Jur, Libel and Slander § 14.
[11, 12] 33 Am Jur, Libel and Slander §§ 90, 96, 106.
[13] 33 Am Jur, Libel and Slander §§ 2, 8, 49, 90.
[14] 33 Am Jur, Libel and Slander §§ 90, 96, 105.
[15] 33 Am Jur, Libel and Slander §§ 103, 104.
[16] 33 Am Jur, Libel and Slander §§ 90, 96, 261.
[17] 33 Am Jur, Libel and Slander § 261.
[18, 19] 32 Am Jur 2d, False Imprisonment §§ 47, 74, 105.
[20] 5 Am Jur 2d, Appeal and Error § 760.
[21] 5 Am Jur 2d, Appeal and Error § 1009.

that, during the time he was on duty in the defendant's store, his activities were under the direction of corporation's supervisory employees.

3. SAME—TRIAL—INSTRUCTION.

Instruction to jury at start of trial setting forth the claims of the parties, and including mention twice that one of the torts in the action was that of false arrest, and mention of arrest in charge to jury at the close of the evidence, without further elaboration on the charge of false arrest *held,* to be sufficient to give the charge of false arrest to the jury for consideration in their deliberations, where the court did not at any point remove the charge from the jury's consideration.

4. SAME—FALSE ARREST—SUFFICIENCY OF EVIDENCE.

Evidence that a private security policeman employed at defendant's department store called to plaintiff to stop outside the store, and that at the time he was clothed in the blue and black uniform of a police officer and was wearing a badge inscribed "Michigan Security Police" *held,* to be facts sufficient for a jury to find such implicit coercion as would support a finding of that unlawful restraint of freedom of action which is at the base of a cause of action for false arrest, hence sufficient to warrant submission to the jury of a count for false arrest.

5. SAME—FALSE ARREST—DEFENSE—PRIVILEGE.

Privilege is a common-law defense to an action for the common-law tort of false arrest.

6. EVIDENCE—COMMON KNOWLEDGE—SHOPLIFTING.

It is common knowledge that the problem of shoplifting, faced by merchants, has reached serious dimensions.

7. FALSE IMPRISONMENT—FALSE ARREST—DEFENSE OF PRIVILEGE—INSTRUCTION.

Instruction to jury, in action for false arrest by customer of department store against the store and a private policeman acting as its agent, should submit the reasonableness of the detention complained of to the jury and should set out the facts which, if found, would constitute reasonable grounds for the defendant's conduct, as a defense to the action.

8. SAME—FALSE ARREST—DEFENSE—PRIVILEGE—MERCHANT.

A private policeman acting as agent of a department store *held,* to have a privilege to detain a person for a reasonable

investigation of the facts if he reasonably believes that the person has unlawfully taken goods held for sale in the defendant's store.

9. SAME—FALSE ARREST—PRIVILEGE—STORE PREMISES.

Privilege of a department store and private policeman agent of department store to detain one reasonably suspected of having unlawfully taken goods held for sale in the defendant's store *held,* to extend to the detention of one who has left the premises but is in their immediate vicinity.

10. LIBEL AND SLANDER—PUBLIC ARREST.

Arrest of plaintiff as suspected shoplifter by private security policeman agent of defendant department store in a parking lot next to defendant's store with other persons present could be sufficient to support a jury's finding of damages for slander provided that an essential element of the tort of slander, publication, is established with legal sufficiency.

11. SAME—SLANDER—PUBLICATION—SPOUSE.

Publication to a spouse of defamatory matter is sufficient to give rise to a cause of action for slander, generally speaking.

12. SAME—SLANDER—PUBLICATION—SPOUSE.

Publication to husband of plaintiff that plaintiff had stolen articles from defendant's store *held,* not sufficient to be slander where, under the facts shown at trial, husband knew all the facts of the transaction and fully knew that his wife had not committed the crime of larceny.

13. SAME—PURPOSE OF ACTION FOR SLANDER—REPUTATION.

The gravamen of an action for slander is damage to reputation, because the purpose behind the law of libel and slander is the protection of reputation.

14. SAME—SLANDER—PUBLICATION—EVIDENCE.

Evidence at trial for slander of plaintiff by public arrest of her in parking lot at defendant's department store, which showed that there were other persons present in the parking lot at the time of the arrest, *held,* not sufficient to show slander where plaintiff testified that she did not know and could not identify any one who had been present, the only witness who could provide any possible inference that there had been a publication of the slander had no idea from whom she had heard of the incident, and her testimony was at least as consistent with the inference that she had learned of the arrest from the plaintiff herself because of their close association for many years, as it was consistent with the

inference that she learned of it from someone who witnessed the arrest and who recognized the plaintiff.

15. SAME—SLANDER—PUBLICATION.

A plaintiff cannot recover for a defamatory statement made by a defendant, if it is the plaintiff, and not the defendant, who publishes the defamatory matter to third persons.

16. SAME—SLANDER—PUBLICATION—PRESUMPTION.

Publication of slander may sometimes be presumed, as it can be in the case of publication of libel in a newspaper.

17. SAME—SLANDER—PROOF OF PUBLICATION.

Proof of publication of a slander is not made merely by establishing the presence of others at the place of the slander, but requires proof that the defamation was published to someone who at least recognized the plaintiff, because damage to the reputation is the gravamen of an action for slander.

18. FALSE IMPRISONMENT—FALSE ARREST—PRIVILEGE—REASONABLE BELIEF—MALICE.

Testimony by a private security policeman that a contest was conducted among the private policemen at defendant's department store, and bonuses were awarded to those making record numbers of apprehensions of suspected shoplifters to spur them on to increased numbers of apprehensions *held,* to be relevant to the question of whether defendant department store's private policeman agent, in calling to and stopping plaintiff for investigation as a suspected shoplifter, acted on reasonable belief or was actuated by malice.

19. SAME—EVIDENCE—INFERENCE—BONUSES FOR APPREHENSIONS.

Showing that a private security policeman was a regularly employed guard in defendant's department store *held,* to allow the jury to make a fair inference that he was aware of a contest conducted among the private policemen at the store by awarding bonuses to those who made record numbers of apprehensions of shoplifters.

20. APPEAL AND ERROR—QUESTIONS REVIEWABLE—NEW TRIAL—. EXCESSIVE VERDICT.

Claim that $43,750 verdict in action for false arrest and slander was grossly excessive and betrays passion and prejudice of an inflamed jury whose foreman had once been involved in a shoplifting incident is not discussed where cause is reversed and new trial granted for lack of publication of the alleged slander.

21. COSTS—NEW TRIAL.

Costs are ordered to await final determination of the cause where action for slander and false arrest is remanded for new trial.

Appeal from Saginaw, Borchard (Fred J.), J. Submitted Division 3 January 9, 1968 at Grand Rapids. (Docket No. 3,666.) Decided June 26, 1968. Leave to appeal granted September 4, 1968. See 381 Mich 773.

Complaint by Marion Bonkowski against Arlan's Department Store, a New York corporation, and Earl Reinhardt for damages for false imprisonment and slander. Third-party complaint by defendant Arlan's against Gerald C. Kaweck, doing business as Michigan Security Police Service. Verdict and judgment for plaintiff against Arlan's, and default judgment for Arlan's against Kaweck. Defendant Arlan's appeals. Reversed and remanded for a new trial.

*van Benschoten & van Benschoten,* for plaintiff.

*Heilman, Purcell, Tunison & Cline,* for defendant.

NEAL E. FITZGERALD, J. This appeal from a jury verdict for false arrest and slander, rendered against the defendant store whose agent stopped and questioned the plaintiff whom he suspected of larceny, surprisingly presents questions that are novel to the appellate courts of this jurisdiction.

The plaintiff, Mrs. Marion Bonkowski, accompanied by her husband, had left the defendant's Saginaw, Michigan store about 10:00 p.m. on the night of December 18, 1962 after making several purchases, when Earl Reinhardt, a private policeman on duty that night in the defendant's store,

called to her to stop as she was walking to her car about 30 feet away in the adjacent parking lot.

Reinhardt motioned to the plaintiff to return toward the store, and when she had done so, Reinhardt said that someone in the store had told him the plaintiff had put three pieces of costume jewelry into her purse without having paid for them. Mrs. Bonkowski denied she had taken anything unlawfully, but Reinhardt told her he wanted to see the contents of her purse. On a cement step in front of the store, plaintiff emptied the contents of her purse into her husband's hands. The plaintiff produced sales slips for the items she had purchased, and Reinhardt, satisfied that she had not committed larceny, returned to the store.

Plaintiff brought this action against Earl Reinhardt and Arlan's Department Store, seeking damages on several counts. She complains that as a result of defendant's tortious acts she has suffered numerous psychosomatic symptoms, including headaches, nervousness, and depression. Arlan's Department Store filed a third-party complaint against Earl Reinhardt's employer, Gerald Kaweck, doing business as Michigan Security Police Service, who defaulted. On the counts of false arrest and slander the case went to the jury, who returned a verdict of $43,750. The defendant's motions for judgment notwithstanding the verdict, remittitur, and new trial were denied by the trial court.

Numerous errors are alleged on appeal; we consider those necessary to the disposition of the case.

We conclude the plaintiff established a case entitling her to go to the jury on a charge of false arrest.[1]

---

1 Although the distinctions are not always clearly set out in the authorities, false arrest, or unlawful arrest, is a species of the common-law action for false inprisonment. See 1 Restatement of Torts, 2d, § 35, comment *a*. For a helpful analysis of the tort of false imprisonment, see the editor's annotation in the footnote of *Josselyn* v. *McAllister* (1872), 25 Mich 45.

But we conclude on the record before us that the cause of action on the ground of slander was not established with legal sufficiency because, as will be discussed *infra,* the proofs were not adequate to permit a jury's finding of publication, an essential element of a cause of action for slander.[2] Therefore there must be a new trial.

We first consider briefly the issue whether defendant, Arlan's Department Store, can be held responsible for the acts of Earl Reinhardt,[3] the private policeman employed by Michigan Security Police Service. Defendant Arlan's Department Store had contracted with the third-party defendant to provide private police protection in its Saginaw store. The record makes it clear that the apprehension of shoplifters was within the scope of Earl Reinhardt's authority and that, during the time he was on duty in the defendant's store, his activities were under the direction of Arlans' supervisory employees. Therefore, we agree with the learned trial judge that Earl Reinhardt, with respect to the incident giving rise to this action, was acting within the scope of his authority as the agent of Arlan's Department Store, which must respond for his acts.[4]

[2] See, generally, Harper and James, the Law of Torts, Libel and Slander.

[3] Earl Reinhardt died before trial. No question was raised at trial regarding the applicability to the testimony of the "dead man's statute" then in force, CLS 1961, § 600.2160 (Stat Ann 1962 Rev § 27A.2160), repealed by PA 1967, No 263, effective November 2, 1967. Since the statute, regulating the admissibility of evidence at trial, does not affect the substantive cause of action, the new trial will be governed by the new statute, PA 1961, No 236, § 2166, as added by PA 1967, No 263 (MCLA § 600.2166, Stat Ann 1968 Cum Supp § 27A.2166) effective November 2, 1967. This statute will not pose difficulty at the new trial because of the important newly added clause "unless some material portion of his testimony is supported by some other material evidence tending to corroborate his claim." The testimony of plaintiff was supported by the corroborating testimony of her husband, and therefore the fact of Reinhardt's death should not render inadmissible the plaintiff's testimony regarding the incident giving rise to the action.

[4] See 92 ALR2d 15, "Principal's Liability for False Arrest or Imprisonment caused by Agent or Servant."

Defendant contends the charge of false arrest was erroneously allowed to go to the jury. There is dispute whether or not the judge's final instruction to the jury actually included the charge of false arrest. We think it did. The trial court, in setting forth the claims of the parties to the jury, said:

"Briefly, this is an action brought by the plaintiff against the Arlan's Department Store in which she claims damages for *slander* and *false arrest,* and before the attorneys introduce any evidence, each of the attorneys will make a full and fair statement of their case and the facts they intend to prove, but I merely briefly tell you what this case is about. The Arlan's Department Store denies any *slander* or *false arrest* and therein lies the issue which you people are to decide." (Emphasis supplied.)

And we find in the trial judge's clear and careful instruction to the jury at the close of the evidence:

"Defendant Arlan's Department Store claims that if Earl Reinhardt did stop the plaintiff that according to her testimony he only detained her for a period of four minutes and *did not attempt to arrest her."* (Emphasis supplied.)

Although the trial court in its final instruction to the jury did not elaborate on this charge of false arrest that it had mentioned to the jury at the outset of the case and early in the charge, nevertheless at no point did the court remove the charge from the jury's consideration, and therefore we conclude that in fact the charge of false arrest was left to them for consideration in their deliberations.

When Reinhardt called to the plaintiff to stop, he was clothed in the blue and black of a police officer,[5] and was wearing a badge inscribed "Michigan

---

[5] It is not clear on the record whether or not Reinhardt was carrying a gun at the time of the incident, but this is not determinative, since even absent a gun, the facts present a case for the jury.

Security Police".[6] These are facts warranting submission to the jury of the charge of false arrest.

*Hill* v. *Taylor* (1883) 50 Mich 549, argued by defendant, although not factually on point since it involved the problem of an arrest by a police officer on an invalid warrant, nevertheless provides *dictum* of Justice CAMPBELL useful to our consideration of the issue of false arrest involved here. Justice CAMPBELL said:

"There can be no such thing as an action for false imprisonment[7] where the plaintiff has not been arrested; and while, as has been held, manual seizure is not necessary, there must be that or *its equivalent in some sort of personal coercion.*" 50 Mich 549, 552. (Emphasis supplied.)

From the facts of the incident established at trial, a jury could find such implicit coercion as would support a finding of that unlawful restraint of freedom of action which lies at the heart of a cause of action for false arrest. See also Justice CAMPBELL's opinion in *Brushaber* v. *Stegemann* (1871) 22 Mich 266. Therefore on remand this allegation may go to the jury in accordance with the rule we now set down.

To the common-law tort of false arrest, privilege is a common-law defense, and we recognize as applicable here a privilege similar to that recognized by the American Law Institute in the Restatement of Torts, 2d. In section 120A, the Institute recognizes a privilege in favor of a merchant to detain for reasonable investigation a person whom he reasonably believes to have taken a chattel unlawfully. We adopt the concept embodied in section 120A, and we state the rule for this action as follows: if defendant Arlan's agent, Earl Reinhardt, reasonably be-

---

[6] No suggestion is made in the record that Reinhardt was deputized by any police authority.

[7] As stated *supra,* note 1, false or unlawful arrest is a species of the common-law action for false imprisonment.

lieved the plaintiff had unlawfully taken goods held
for sale in the defendant's store, then he enjoyed a
privilege to detain her for a reasonable investigation
of the facts.

The Commissioners' comment states the strong
reason behind recognizing such a privilege:

"The privilege stated in this section is necessary
for the protection of a shopkeeper against the dilem-
ma in which he would otherwise find himself when
he reasonably believes that a shoplifter has taken
goods from his counter. If there were no such priv-
ilege, he must either permit the suspected person to
walk out of the premises and disappear, or must
arrest him, at the risk of liability for false arrest if
the theft could not be proved." 1 Restatement of
Torts, 2d, page 202.

That the problem of shoplifting, faced by mer-
chants, has reached serious dimensions is common
knowledge, and we find compelling reason to recog-
nize such a privilege, similar to that recognized in
other jurisdictions. *Collyer* v. *S. H. Kress Co.*
(1936), 5 Cal 2d 175, (54 P2d 20); *Montgomery
Ward & Co., Inc.* v. *Freeman* (CA 4, 1952), 199 F2d
720.

In *Montgomery Ward & Co., Inc.* v. *Freeman,* the
United States Court of Appeals for the Fourth Cir-
cuit, in a case arising in Virginia and involving a
detention considerably longer than the detention
here of Mrs. Bonkowski, reversed a verdict for the
plaintiff because of the trial court's too narrow in-
struction on the point of justifiable detention and
sent the case back, stating that "the instruction
should submit the reasonableness of the detention
to the jury and should set out the facts which, if

found, would constitute reasonable grounds for the defendant's conduct." 199 F2d 720, 724.[8]

The privilege we recognize here goes beyond that set forth in the Restatement, for the Commissioners there stated a caveat that "the Institute expresses no opinion as to whether there may be circumstances under which this privilege may extend to the detention of one who has left the premises but is in their immediate vicinity." 1 Restatement of Torts, 2d page 202.

In their comment, the Commissioners state that, by their caveat, in the absence of express authority, they intended to leave the question open. 1 Restatement of Torts, 2d, page 204. We think the privilege should be so extended here because we think it entirely reasonable to apply it to the circumstances of the case at bar, for the reason that a merchant may not be able to form the reasonable belief justifying a detention for a reasonable investigation before a suspected person has left the premises. In *Montgomery Ward, supra*, the court recognized the privilege as applicable even though the plaintiff was stopped by a manager after she had left the store.

On remand on the cause for false arrest, therefore, it will be the duty of the jury to determine in accordance with the rule we have set down, whether or not the defendant's agent, Earl Reinhardt, reasonably believed the plaintiff had unlawfully taken any goods held for sale at the defendant's store. If the jury finds the defendant's agent did so reasonably believe, then it must further determine whether the investi-

---

[8] In certain jurisdictions, the legislatures have crystallized into statutory enactments the privilege recognized in the above cases in the form of a common-law defense. For cases interpreting such statutes, see 86 ALR2d 435.

Compare this common-law privilege with the legislative enactment, CLS 1961, § 600.2917 (Stat Ann 1962 Rev § 27A.2917) in which the Michigan legislature has regulated what are awardable damages in actions such as this. The trial court correctly instructed the jury on the applicability of the statute in this action.

gation that followed was reasonable under all the circumstances. If the jury finds the defendant does not come within this privilege, then from the facts as discussed above, it could find a false arrest.

The allegation of slander poses further difficulty. We do not question that what took place in the parking lot adjacent to defendant's store on December 18, 1962, could sustain a jury finding of actionable slander. The Pennsylvania Supreme Court, in *Bennett* v. *Norban* (1959), 396 Pa 94, 98 (151 A2d 476, 478), said of a similar incident:

"The direction to remove her [plaintiff's] coat, the question about her pockets, the action of feeling in them and then searching her purse: these events formed a dramatic pantomime suggesting to the assembled crowd that appellant was a thief."

We concur in this analysis and consider that the facts here could support a jury's finding of a "dramatic pantomime". See 71 ALR2d 808 "Defamation by Acts", 3 Restatement of Torts § 568(2).

However, publication, an essential element of the tort of slander, was not established with legal sufficiency so as to make this charge proper. The testimony at trial established that, at the time of the incident, in addition to plaintiff's husband, Frank Bonkowski, there were other persons present in the parking lot.

Unquestionably, according to the general principle, publication to a spouse of defamatory matter is sufficient to give rise to a cause of action for slander.[9] Publication to one spouse, for example, of an imputation of adultery by the other spouse, is defamation of a most serious kind. But in the instant case, publication to plaintiff's husband was not sufficient for the reason that, under the facts adduced at trial, there was no possibility that the defendant's agent

---

[9] Harper and James, the Law of Torts, § 5.15.

defamed the plaintiff in the eyes of her husband.
The testimony brought out that it was plaintiff's
husband who paid the cashier for the items of cos-
tume jewelry plaintiff was suspected of taking un-
lawfully.  At the scene in the parking lot, when Earl
Reinhardt had stopped Mrs. Bonkowski and in-
formed her of his suspicion, Frank Bonkowski re-
sponded "show him".  Frank Bonkowski was fa-
miliar with all of the facts of the transaction and
knew full well his wife had not committed the crime
of larceny.  The purpose behind the law of libel and
slander is the protection of reputation, and the gra-
vamen of an action for slander is damage to reputa-
tion.[10]  Here what took place could not possibly have
damaged plaintiff's reputation in the eyes of her hus-
band, and therefore, with respect to him, plaintiff
was not slandered.

In *Linck* v. *Driscoll* (1895), 13 Ind App 279 (41
NE 463), the Indiana court of appeals affirmed a
verdict for the plaintiff-wife accused of stealing eggs
by the defendant-merchant although the defamation
was published only to plaintiff's husband who had
not been present during the defamatory incident.
The court's opinion in *Linck*, however, provides the
inference that the proof of publication would not
have been adequate and the result might have been
different if the husband had been present during the
incident and had therefore been familiar with the
facts of the transaction, knowing his wife had not
committed larceny.  We find the facts here call for
such an interpretation and such a result.  Other
cases interpreting the requirement of publication
when only one third party was present to hear a
slander can be found in 92 ALR2d 230, 237, § 9.

Testimony at trial established that there were
other persons present in the parking lot at the time

---

[10] Harper and James, the Law of Torts, § 5.15; *Lyle* v. *Clason*
(NY, 1804), 1 Caines 581.

of the incident.  But the plaintiff responded in the negative to defense counsel's question whether or not she knew or could identify anyone who had been present.  The testimony of only one person, Mrs. Elaine Filiatraut, plaintiff's neighbor, could provide any possible inference that there had been a publication of the slander.  Mrs. Filiatraut's testimony went principally to the injury alleged by the plaintiff; she merely testified that, whereas plaintiff had been a jolly, outgoing person, active in school, church, and neighborhood activities, after the incident Mrs. Bonkowski became depressed and introverted.  Mrs. Filiatraut had no idea from whom she had heard of the incident.  Her testimony is at least as consistent with the inference that she had learned of it from the plaintiff herself, her neighbor and friend of many years, as it is consistent with the inference that she learned of it from someone who witnessed the incident and who recognized the plaintiff.  A plaintiff cannot recover for a defamatory statement made by a defendant, if it is the plaintiff, and not the defendant, who publishes the defamatory matter to third persons.  *Shinglemeyer* v. *Wright* (1900) 124 Mich 230; *Wilcox* v. *Moon* (1892) 64 Vt 450 (24 A 244); 92 ALR2d 219.

The testimony of Mrs. Filiatraut, therefore, cannot establish the requisite element of publication, for as the Supreme Court ruled through the opinion of Justice Edwards in *Poledna* v. *Bendix Aviation Corporation* (1960), 360 Mich 129, concerning proof of damages in an action for slander, a jury cannot be allowed to speculate by piling inference upon inference.  Causal links must be forged by evidence; they cannot be fabricated out of speculations.

Our ruling here does not mean to suggest that requisite publication of slander may never be presumed, as it can be in the case of publication of libel

in a newspaper. *Steketee* v. *Kimm* (1882), 48 Mich
322. But the proofs here do not suffice.

In *Tocker* v. *Great Atlantic & Pacific Tea Company* (1963), 190 A2d 822, involving a defamation
with facts similar to those before us, the court of
appeals of the District of Columbia held that merely
establishing the presence of others does not sustain
the requisite burden of proof of publication. Since
damage to reputation is the gravamen of an action
for slander, there must be proof that the alleged
defamation was published to someone who at least
recognized the plaintiff. For other analogous interpretations of the requirement of publication, see
*Enright* v. *Bringgold* (1919), 106 Wash 233 (179 P
844); *Gnapinsky* v. *Goldyn* (1957), 23 NJ 243 (128
A2d 697).

Defendant questions the admissibility of the testimony of Anthony Zarlengo, a former employee of
Michigan Security Police Service who had been on
guard in defendant's Saginaw store in December,
1962. He testified that a contest was conducted
among the private policemen at defendant's store
to spur them on to increased numbers of apprehensions of shoplifters, and that bonuses were awarded
to those making record numbers of apprehensions.
We think the testimony should be admissible since
it is relevant to the question whether defendant's
agent, in calling to and stopping plaintiff, acted on
reasonable belief or was actuated by malice. Objection is made that it was not shown Earl Reinhardt
was aware of the contest, but we think it would be
a fair and permissible inference for the jury to make
that, if Reinhardt was a regularly employed guard
in defendant's store, he would have been aware of
the contest.

Defendant objects to certain other of the trial
court's instructions to the jury, but from our review

we conclude the learned trial judge was entirely correct in these instructions.

On motion for new trial and on this appeal, defendant attacks the verdict on the ground that James Bell, who served as foreman of the jury which returned the verdict for $43,750, had once been involved in a shoplifting incident. Defendant charges the verdict is grossly excessive and betrays the passion and prejudice of an inflamed jury. Our disposition of the case renders consideration of these issues unnecessary.

Reversed and remanded for new trial in accordance with this opinion. The award of costs to await final determination of the cause.

JOHN W. FITZGERALD, P. J., and BURNS, J., concurred with NEAL E. FITZGERALD, J.