BONKOWSKI v. ARLAN'S DEPARTMENT STORE.

Opinion of the Court.

1. Arrest—Intent—Act—Control.

Arrest is the taking, seizing, or detaining of a person, either by touching or putting hands on him, or any act which indicates an intention to take a person into custody and subject the person arrested to the actual control and will of the person making the arrest provided the act constituting the arrest is performed with the intent to effect an arrest and was so understood by the party arrested (PA 1958, No 182).

2. Arrest—False Arrest—Elements of Tort—Intention.

Submission to the jury of an issue of false arrest in an action for false arrest and slander was not justified where plaintiff failed to present proof that defendant department store's security guard had an intention to take plaintiff into custody when he accosted her outside defendant's store and accused her of shoplifting.

References for Points in Headnotes

[1] 5 Am Jur 2d, Arrest § 1.
[2] 32 Am Jur 2d, False Imprisonment § 5 et seq.
[3] 33 Am Jur, Libel and Slander § 90 et seq.
Defamation by acts, gestures, pantomime, or the like. 71 ALR2d 808.
Defamation: actionability of accusation or imputation of shoplifting. 29 ALR3d 961.
[4] 33 Am Jur, Libel and Slander § 107.
[5] 33 Am Jur, Libel and Slander § 126.
[6] 33 Am Jur, Libel and Slander § 266.
[7] 33 Am Jur, Libel and Slander § 111.
[8] 33 Am Jur, Libel and Slander § 265 et seq.
[9] 33 Am Jur, Libel and Slander § 305.
[10, 11, 14, 15, 17–19] 33 Am Jur, Libel and Slander § 281 et seq.
[12] 32 Am Jur 2d, False Imprisonment § 74.
[13] 33 Am Jur, Libel and Slander § 299.
[16] 39 Am Jur, New Trial §§ 217, 218.
5 Am Jur 2d, Appeal and Error § 876.

3. LIBEL AND SLANDER—GESTURES—PUBLICATION OF SLANDER.

Publication of slander was made out by the "holler" of a department store security guard when he, within the hearing of unidentified persons, called plaintiff and directed her by motions to return to a point near the door of the store, for dramatic pantomime or transitory gestures within the sight of others may constitute publication.

4. LIBEL AND SLANDER—PUBLICATION—SPOUSE.

A defamation uttered or dramatized only in the presence of the accused's spouse, even though the spouse knew of the innocence of the accused, is legal publication, although the spouse's knowledge might affect the measure of damages.

5. LIBEL AND SLANDER — QUALIFIED PRIVILEGE — COMMUNICATION — GOOD FAITH — INTEREST — DUTY.

Persons charged with slander have a qualified privilege at common law to communicate in good faith with persons having an interest to be upheld when in reference to a matter which the person communicating had a corresponding interest or duty, as long as the communication was limited in scope and was made in a proper manner on a proper occasion.

6. LIBEL AND SLANDER—MALICE—BURDEN OF PROOF.

Plaintiff has the burden of proving the untruth of statement and actual malice in an action for defamation, where it appears the communication is subject to qualified privilege.

7. LIBEL AND SLANDER—MALICE—WRONGFUL ACT—JUSTIFICATION.

Malice means ill will toward some person and in its legal sense it applies to a wrongful act committed intentionally against a person without legal justification or excuse.

8. LIBEL AND SLANDER—EVIDENCE—MALICE—QUALIFIED PRIVILEGE— APPREHENSION OF LAWBREAKERS.

The Supreme Court will not determine, in the absence of authority, whether testimony of a floor walker employed by defendant of an action for slander, indicating that defendant set up a contest for most arrests by defendant's security guards, was sufficient evidence to establish the element of malice so as to carry to the jury the question whether qualified privilege was exceeded by one of defendant's guards in accusing plaintiff of shoplifting, although it would seem that one may be assiduous in apprehending possible lawbreakers without, either in fact or in law, acting with malice.

9. LIBEL AND SLANDER — INSTRUCTIONS — PUNITIVE DAMAGES — EXEMPLARY DAMAGES — AGGRAVATED DAMAGES — STATUTES.

Instruction by trial judge in customer's action against storekeeper for slander that statute relative to exemption from punitive, exemplary, or aggravated damages would be inapplicable if plaintiff had proved by a preponderance of evidence that the defendant had acted with unreasonable disregard of plaintiff's rights or sensibilities even though defendant had sustained its burden of proof that it had probable cause to believe or did believe plaintiff had committed larceny from the store *held* error (PA 1958, No 182).

10. LIBEL AND SLANDER—LARCENY—SUSPECT—DETENTION—DAMAGES —BURDEN OF PROOF—PROBABLE CAUSE—STATUTES.

Right to recover damages for mental anguish, punitive, exemplary, or aggravated damages, in action of slander by a plaintiff who was stopped by a security guard of a department store as a larceny suspect, is conditioned by statute upon proof that defendant store or its agent acted with unreasonable disregard of plaintiff's rights or sensibilities or acted with intent to injure plaintiff (PA 1958, No 182).

11. LIBEL AND SLANDER—LARCENY—STATUTES—MERCHANT—DETENTION—PROBABLE CAUSE.

The purpose of the act limiting recovery in certain civil actions where defendant merchant or his agents have reasonable grounds to believe plaintiff has stolen goods from defendant is to assure the merchant a measure of statutory relief from punitive damages and damages resulting from mental anguish when the merchant has probable cause to suspect plaintiff of larceny and does not use unreasonable force or does not detain him for an unreasonable length of time (PA 1958, No 182).

12. FALSE IMPRISONMENT — MERCHANT — CUSTOMER — DETENTION — PRIVILEGE.

Reasonable belief that another has tortiously taken a chattel from a merchant's premises or has failed to make due cash payment for a chattel purchased or service rendered gives rise to a privilege, without arresting the other, to detain him on the premises for the time necessary for a reasonable investigation of the facts.

13. LIBEL AND SLANDER—APPEAL AND ERROR—JURY—EXCESSIVE VERDICT—INSTRUCTIONS TO JURY—BURDEN OF PROOF.

Jury verdict of $43,000, in action for slander and false arrest in which trial judge gave an erroneous instruction that de-

fendant department store had the burden of proving by a preponderance of evidence that it had probable cause to believe or did believe plaintiff committed larceny from its store, *held*, grossly excessive, where the proof submitted by plaintiff, when arrayed with the act limiting recovery to actual damages, indicates plaintiff who was detained by an agent of defendant store as a larceny suspect failed to prove defendant was without probable cause or that defendant security guard had acted with unreasonable disregard for plaintiff's rights or sensibilities (PA 1958, No 182).

14. LIBEL AND SLANDER—MERCHANTS—DAMAGES—BURDEN OF PROOF —STATUTES.

One bringing action against a merchant, or his or its agent, for slander may recover no more than compensatory damages unless he sustains his burden of proof at common law and in addition sustains the burden of proving that the merchant or his agent unreasonably disregarded plaintiff's rights or sensibilities or acted with intent to injure plaintiff (PA 1958, No 182).

15. FALSE IMPRISONMENT—LIBEL AND SLANDER—MERCHANTS—SHOP- LIFTING—DETENTION.

Shoplifting has reached serious proportions, and a shopkeeper should not be compelled to allow a suspect to disappear or accost him at the risk of punitive mulct for alleged false arrest or slander except where it is proved that the merchant or his agent used unreasonable force or detained plaintiff an unreasonable length of time or acted with unreasonable disregard of plaintiff's rights or sensibilities or acted with intent to injure plaintiff (PA 1958, No 182).

SEPARATE OPINION.

T. M. KAVANAGH, ADAMS, and T. G. KAVANAGH, JJ.

16. APPEAL AND ERROR—FALSE IMPRISONMENT—ABANDONED COUNT— NEW TRIAL.

*A count of false arrest alleged in plaintiff's complaint, but abandoned in oral argument before the Supreme Court, unequivocally removes that issue from the case and makes it unnecessary for the Supreme Court to make a decision on that issue and also makes it unnecessary for the abandoned issue of false arrest to be considered in a new trial.*

17. LIBEL AND SLANDER—QUALIFIED PRIVILEGE—BURDEN OF PROOF.

The burden is upon the plaintiff in a slander action to prove the untruth of the statement and actual malice where it appears that the occasion was subject to a qualified privilege, but before this rule applies, defendant must bear the burden of proving an absolute or qualified privilege.

18. LIBEL AND SLANDER—MERCHANTS—STATUTES—BURDEN OF PROOF —DAMAGES.

The statute relating to slander actions against merchants neither creates a qualified privilege nor changes the burden of proof on either plaintiff or defendant from that of the common-law action, but only limits the amount of damages plaintiff may recover under certain circumstances (PA 1958, No 182).

19. LIBEL AND SLANDER—MERCHANTS—ACCUSATION—SHOPLIFTING— DAMAGES.

Plaintiff may recover damages resulting from mental anguish or punitive, exemplary or aggravated damages if he carries the burden of proof that a merchant or his agent unreasonably disregarded plaintiff's rights or sensibilities or acted with intent to injure plaintiff in making an accusation of shoplifting, but plaintiff is limited to recovering only compensatory damages if he fails to meet that burden of proof (PA 1958, No 182).

Appeal from Court of Appeals, Division 3, John W. Fitzgerald, P. J., and Burns and Neal E. Fitzgerald, JJ., reversing and remanding Saginaw, Fred J. Borchard, J. Submitted April 9, 1969. (Calendar No. 14, Docket No. 52,111.) Decided March 9, 1970.

12 Mich App 88 reversed in part.

Complaint by Marion Bonkowski against Arlan's Department Store, a New York corporation, and Earl Reinhardt for damages for false imprisonment and slander. Third-party complaint by defendant Arlan's against Gerald C. Kaweck, doing business as Michigan Security Police Service. Verdict and judgment for plaintiff against Arlan's, and default judgment for Arlan's against Kaweck. Defendant

Arlan's appealed to Court of Appeals.  Reversed and remanded.  Plaintiff appeals and defendant Arlan's Department Store cross-appeals.  Reversed in part and remanded for new trial of slander count.

*van Benschoten & van Benschoten,* for plaintiff.

*Gussin, Weinstein & Kroll,* for defendant Arlan's Department Store.

BLACK, J.  This damage action arose out of a security guard's accost and accusation of plaintiff as a suspected shoplifter from defendant Arlan's Department Store in Saginaw.  The security guard died before the trial.  The date of death does not appear.  His testimony was not taken by deposition and so was not available for the issue of probable cause and such other issues as may during the trial have arisen under the "excepting when it is proved" provision of PA 1958, No 182.  For this statute as it presently reads see CLS 1961, § 600-.2917 (Stat Ann 1962 Rev § 27A.2917).  We shall refer to it later.[1]

December 18, 1962, at about ten o'clock p.m., plaintiff and her husband left Arlan's after making some purchases.  When she was about 30 feet beyond the door the guard, in some sort of uniform, called her back to a point near the door where he made certain accusatory statements and, with plaintiff's permission, examined the contents of her purse to ascertain whether certain jewelry had been stolen.  The husband testified that the event occurred near enough to the door "for everybody to hear him holler."  However, no other possible witness was known, recognized, or sworn.  After it was learned

---

[1] The act of 1958 was repealed by PA 1961, No 236 and substantially re-enacted as section 2917 thereof (CLS 1961, § 600.2917).

that there had been no such theft, plaintiff and her husband departed. The entire incident lasted some four to five minutes. For further details see the opinion of Division 3 (*Bonkowski* v. *Arlan's Department Store* [1968], 12 Mich App 88).

Plaintiff sued Arlan's and the security officer, Earl Reinhardt, for $450,000. Her complaint in four counts set forth these theories of recovery: slander, false arrest, assault and battery, and invasion of privacy. Issues framed by the counts for slander and false arrest only were tried. The jury returned a verdict for plaintiff against Arlan's in the amount of $43,750, upon which judgment was entered. On appeal by Arlan's,[2] Division 3 concluded that plaintiff's false arrest theory was sufficiently proven to make a jury issue, but that the publication element of her slander theory had not been proven. The judgment was ordered reversed with remand for new trial. Plaintiff's application for leave to review was granted here September 4, 1968. 381 Mich 773.

*First:* We agree with Division 3 that the judgment of the circuit court should be reversed with remand for new trial. We disagree, however, with the conclusion reached by the seated judges that the record as made authorized submission to the jury of the issue of false arrest. Plaintiff's proof, tested by this Court's adoption in 1959 (*People* v. *Gonzales* [1959], 356 Mich 247, 253) of the definition of "arrest" appearing in 4 Am Jur, Arrest, § 2, p 5, leaves too many voids for any suggestion that Mrs. Bonkowski was arrested by Mr. Reinhardt.[3] See Judge NEAL FITZGERALD's apt quotation of *Hill* v. *Taylor* (1883),

---

[2] Arlan's third-party compaint, against one Gerald C. Kaweck individually and doing business as Security Police Service (employer of defendant Reinhardt), resulted in a third-party judgment for Arlan's against Kaweck in the same amount. Rheinhardt died between trial and motion for new trial. He was not sworn during the trial.

[3] For the current and substantially equivalent definition, see 5 Am Jur 2d, Arrest, § 1, pp 695, 696.

50 Mich 549, 552 (12 Mich App 88, 96). Here the first and necessary element which is absent is proof of an intention to take the person accosted into custody. Absent an arrest there could have been no false arrest as charged. Furthermore, both in brief and oral argument, plaintiff's counsel unequivocally abandoned the charge of false arrest and concentrated upon contention that the count for slander was made submissible by the proof. Accordingly, upon retrial, the count for false arrest will be stricken and the trial will proceed solely upon plaintiff's count charging slander.

*Second:* We disagree with Division 3's view that plaintiff's proofs of the count for slander failed for want of "the requisite element of publication." Our view of the proof inclines toward that taken by the favorably-entitled plaintiff; the issue being whether there is proof or fair inference from proof that there was legal publication by what the guard said and did. That publication was made out, by the "holler" of the guard within hearing of others (whether identified or not) and by the "dramatic pantomime" or "transitory gestures" which ensued within sight of others, is fairly established by predominant authority. See *Bennett* v. *Norban* (1959), 396 Pa 94 (151 A2d 476, 71 ALR2d 803), and accompanying annotation (p 808) "Defamation by acts, gestures, pantomime, or the like"; also authorities cited in the recent annotation, "Defamation: Actionability of Accusation or Imputation of Shoplifting", 29 ALR3d 961, and the still more recent case of *Great Atlantic & Pacific Tea Co., Inc.* v. *Paul* (1970), 256 Md 643 (261 A2d 731).

We agree further with plaintiff that a defamation, though uttered or dramatized in the presence of one's spouse only, constitutes some evidence of publication. It is true as pointed out below that the

husband knew she was innocent. But that fact does not dilute the fact of legal publication, or affect the cause except as it may bear upon the recoverable amount of the plaintiff's damages. We may fairly presume that, in the uneven course of marital life, the humiliation suffered by a plaintiff in like circumstances is more likely to be recalled—and brooded over—than if the event in question had occurred in the presence of strangers then and strangers forever. In short, there was legal publication to the husband. This brings us to questions that are likely to arise on retrial of plaintiff's count for slander.

*Third:* The most substantial question arising from plaintiff's count for slander and proof thus far submitted is whether she has overcome the privilege which at common law (*Bufalino* v. *Maxon Brothers, Inc.* [1962], 368 Mich 140, and cases therein cited) is qualifiedly enjoyed by those charged with slander, as in this case. In *Bufalino* Justice KELLY, writing for the Court, quoted and approved the general rule appearing in 33 Am Jur, Libel and Slander, § 126, pp 124, 125, 126 (p 153). His opinion concluded (pp 157, 158):

"A notice of justification is not evidence of malice and should not be treated as a republication of the libel and no facts are put in issue except those declared on (*Wheaton* v. *Beecher* [1890], 79 Mich 443); in an action of libel where it appears that the occasion is subject to a qualified privilege, the burden is upon the plaintiff to prove the untruth of the statements and actual malice (*Van Vliet* v. *Vander Naald* [1939], 290 Mich 365); where a privilege is qualified the communication is not actionable if made in good faith, and dishonesty of purpose may not be lightly inferred from acts which are just as consistent with good faith as with bad faith and if the circumstances relied on as showing malice are as consistent with its nonexistence as with its existence, the presump-

tion of good faith has not been overcome (*Powers* v.
*Vaughan* [1945], 312 Mich 297, 307).

"There is nothing in the record to prove that the
report of investigation was prepared with an inten-
tion to injure plaintiff, nor is there proof of express
or actual malice.

"The trial court correctly ruled that qualified priv-
ilege was not lost because of malice."

Malice, in its common acceptation, means ill will
toward some person. In its legal sense, it applies
to a wrongful act committed intentionally against
that person, without legal justification or excuse. To
establish malice plaintiff called to the stand a former
employee of the defendant Kaweck, one Anthony
Zarlengo. We discuss Mr. Zarlengo's testimony
since its purport and effect, if admissible (it came
in without objection), is bound to arise on retrial.

Mr. Zarlengo testified that he was engaged as a
"floor walker" in defendant's Saginaw store. The
incident in question took place just outside the store.
He knew nothing of the incident but was questioned
by plaintiff's counsel to establish that the defendant
had set up a " 'contest' for most arrests by defend-
ant's security guards". The quoted terminology is
that of plaintiff's counsel. Their brief describes—
a bit expansively—the Zarlengo testimony :[4]

"Because Earl Reinhardt, the guard who had
stopped and searched Mrs. Bonkowski, died before
the trial, plaintiff subpoenaed Anthony Zarlengo,
the security guard who was working 'as a team' with
Reinhardt in defendant's Saginaw store in Decem-
ber, 1962. Mr. Zarlengo told the jury that he knew
district manager Falk, and that Mr. Falk had called
him and his boss, Gerald Kaweck, into the office in
December, 1962, and asked him 'to break the record'

---

[4] For Division 3's review of Mr. Zarlengo's testimony and con-
clusion drawn therefrom, see 12 Mich App at p 102.

for apprehensions for that month of December, 1962. He wanted Zarlengo to do between '60 and 65' for December, and promised him a 'nice bonus' if he could 'break the record' for December. Zarlengo told the jury that he then broke the record by getting 75 arrests that month.

"Defendant Arlan's district manager, Mr. Falk, first said that he 'could have' talked to the stores' guards 'about the number of arrests *they ought to make*,' but then flatly denied that he ever did talk to them. Zarlengo's testimony, of course, tended to impeach Mr. Falk on this denial." (Emphasis by counsel.)

Later on in the course of his testimony, Zarlengo said that in one month (not shown to be the one in which the mentioned incident occurred) he had apprehended "60 or 65 people" and that all had "actually shoplifted."

The question naturally arising from the Zarlengo testimony is whether it constituted evidence of malice sufficient to carry to the jury, as against the rule of *Bufalino,* the question of qualified privilege. Since no authority has been cited, or found as yet upon independent research, for the proposition that the described contest constituted some evidence of malice toward this plaintiff, we decline now to rule upon the question of sufficiency of the present proof as establishing that necessary element. The seemingly reasonable thought is that one may act without malice, either in fact or law, and yet be assiduous in going about any lawfully assigned task of apprehending possible lawbreakers.

*Fourth:* By cross-appeal defendant Arlan's raises the question of excessiveness of verdict. The panel below found it unnecessary to treat that issue. Since it may arise upon retrial in the light of mentioned

§ 600.2917, we consider it to necessarily restricted extent.   Section 600.2917 read at the time:[5]

"In any civil action against a merchant, his or its agent, for false imprisonment, unlawful arrest, assault, battery, libel or slander, if the claim arose out of conduct involving a person suspected of removing or of attempting to remove from a store without right or permission goods held for sale therein, where the merchant, his or its agent had probable cause for believing and did believe that the plaintiff had committed or aided or abetted in the larceny of goods held for sale in said store, no damages for or resulting from mental anguish and no punitive, exemplary or aggravated damages shall be allowed a plaintiff, excepting when it is proved that the merchant, or his or its agent used unreasonable force or detained plaintiff an unreasonable length of time or acted with unreasonable disregard of plaintiff's rights or sensibilities or acted with intent to injure plaintiff."

Having first read the statute to the jury, the trial judge went on, erroneously:

"For this statute to be applied as a defense in this case, the defendant Arlan's Department Store would have the burden of proving by a preponderance of the evidence that it had probable cause to believe or did believe that the plaintiff had committed larceny from its store, and I further instruct you that even though defendant Arlan's Department Store did prove that it did believe or had probable cause for believing that the plaintiff, Mrs. Bonkowski had committed larceny from its store, the law would still have no application and would be no defense if the plaintiff, Mrs. Bonkowski has proved by a preponderance of the evidence that the defendant Ar-

[5] See footnote 1, *ante.* The rule of law exhibited by PA 1958, No 182, has been continued, notwithstanding its repeal, by its reenactment as PA 1961, No 236, § 2917, effective January 1, 1963, after the cause of action in this case had arisen.

lan's Department Store or its agents acted with unreasonable disregard of plaintiff's rights or sensibilities."

In order to recover the more than purely compensatory damages which plaintiff claims by the first count of her complaint (slander), it will be incumbent upon her to prove that the security guard "acted with unreasonable disregard of plaintiff's rights or sensibilities or acted with intent to injure plaintiff." Plaintiff's right to recover damages for or resulting from mental anguish, or "punitive, exemplary or aggravated damages" is by the statute conditioned upon such proof.

The aimed purpose of § 600.2917 appeared lucidly in the entitlement of the act of its origin (PA 1958, No 182):

"An act to limit the recovery in certain civil actions where the defendant or his agent has reasonable grounds to believe the plaintiff has stolen goods from the defendant."

That purpose was restated pointedly by Professor Hawkins in his "Practice Commentary" below § 2917 (33 MCLA p 681):

"RJA § 2917 was derived from PA 1958, No 182, which was apparently intended to assure the merchant a measure of statutory relief. However, the statute does not give the merchant a privilege of reasonable detention as a complete defense, but rather precludes the recovery of damages attributable to mental anguish and punitive damages, if the merchant had probable cause for suspecting the plaintiff and did not use unreasonable force or detain him for an unreasonable length of time."

Conjoined with such purpose is § 120A of Restatement of Torts 2d and comment "a" thereunder. They read (p 202):

"§ 120 A.  Temporary Detention for Investigation

"One who reasonably believes that another has tortiously taken a chattel upon his premises, or has failed to make due cash payment for a chattel purchased or services rendered there, is privileged, without arresting the other, to detain him on the premises for the time necessary for a reasonable investigation of the facts."

"Comment:

"(a) The privilege stated in this Section is necessary for the protection of a shopkeeper against the dilemma in which he would otherwise find himself when he reasonably believes that a shoplifter has taken goods from his counter.  If there were no such privilege, he must either permit the suspected person to walk out of the premises and disappear, or must arrest him, at the risk of liability for false arrest if the theft could not be proved."

Arraying § 2917 with the proof disclosed by the present record, we find the verdict of the jury grossly excessive.  Upon retrial, should the case go to the jury, it is doubtful that any amount awarded plaintiff will approach such a figure.

*To Summarize:*

Looking at § 600.2917 and the misapprehensions below of its entitled and embodied purpose, it is due to say for retrial that one suing "a merchant, his or its agent, for  *  *  *  slander," may recover no more than compensatory damages unless he sustains not only his burden at common law but also the burden of proving that "the merchant, or his or its agent used unreasonable force or detained plaintiff an unreasonable length of time or acted with unreasonable disregard of plaintiff's rights or sensibilities or acted with intent to injure plaintiff."

With Division 3 (12 Mich App at p 97) we take notice, as the legislature has clearly taken notice, that shoplifting has reached most serious if not un-

restrained proportions. The shopkeeper should not, in the words of Restatement, *supra,* be compelled either to permit the suspect to walk out and disappear, or accost him as done here at imminent risk of *punitive* mulct for any cause specified in § 600-.2917 should that shopkeeper's suspicion prove unfounded. The only exception to this arises when the burden of proof, exacted as above, has been sustained.

The undersigned vote to reverse with remand for new trial of the issue of slander only. All costs thus far sustained will abide the final result.

T. E. Brennan, C. J., and Dethmers and Kelly, JJ., concurred with Black, J.

T. M. Kavanagh, J. We agree with Justice Black that on the issue of slander sufficient proof was submitted to create a jury question and that a new trial, limited exclusively to the issue of slander, should be granted.

Although plaintiff's original complaint alleges false arrest, she has since unequivocally abandoned this count and retrial of the cause will proceed solely on the issue of slander. We do not believe that the issue of false arrest calls for decision by this Court at this time. However, since Justice Black has discussed this issue in his opinion and reached what we consider to be an erroneous conclusion—that the record as made did not authorize the submission of this issue to the jury—we feel compelled to state that as presented by this record the following facts and reasonable inferences drawn therefrom in the light most favorable to the plaintiff create a submissible jury question.

When security officer Reinhardt called to the plaintiff to stop, he was clothed in the blue and black of

a police officer and was wearing a badge inscribed, "Michigan Security Police." He motioned for plaintiff to return to the store and required her to empty the contents of her purse. Plaintiff denied she had taken anything unlawfully, but complied with the security officer's request.

Justice CAMPBELL, writing in *Hill* v. *Taylor* (1883), 50 Mich 549, 552, stated:

"There can be no such thing as an action for false imprisonment where the plaintiff has not been arrested; and while, as has been held, manual seizure is not necessary, there must be that or its equivalent in some sort of personal coercion."

The definition of an arrest in *People* v. *Gonzales* (1959), 356 Mich 247, 253, and in 4 Am Jur, Arrest, § 2, p 5, is:

"An arrest is the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody and subjects the person arrested to the actual control and will of the person making the arrest. The act relied upon as constituting an arrest must have been performed with the intent to effect an arrest and must have been so understood by the party arrested."

We agree that Judge NEAL E. FITZGERALD, writing for the Court of Appeals, correctly applied the law to the facts in this case when he concluded (12 Mich App 88, 96):

"From the facts of the incident established at trial, a jury could find such implicit coercion as would support a finding of that unlawful restraint of freedom of action which lies at the heart of a cause of action for false arrest."

However, at oral argument in the Supreme Court, plaintiff's counsel unequivocally removed the issue

of false arrest from the case. On retrial, the count for false arrest will be stricken and the trial will proceed solely upon plaintiff's count charging slander.

Justice Black in his opinion, testing the proofs thus far submitted under plaintiff's count for slander, discusses them excusively in the terms of a qualified privilege enjoyed by those charged with slander, as in this case, citing Justice Kelly's opinion in *Bufalino* v. *Maxon Brothers, Inc.* (1962), 368 Mich 140. The quotation cited by Justice Black from Justice Kelly's *Bufalino* opinion reads in part (p 157):

"[I]n an action of libel where it appears that the occasion is subject to a qualified privilege, the burden is upon the plaintiff to prove the untruth of the statements and actual malice (*Van Vliet* v. *Vander Naald* [1939], 290 Mich 365)." (Emphasis supplied.)

We do not disagree with the rule as expressed by Justice Kelly in *Bufalino,* but suggests that it is misinterpreted by Justice Black when he implies that those charged in *Bufalino* had a qualified privilege as a matter of law. The above-underscored language of *Bufalino* presupposes the common-law rule in an action for slander which imposes the burden of proving an absolute or qualified privilege on the defendant. Only after this is established does the rule written for by Justice Kelly in *Bufalino* apply.

Justice Black's construction of PA 1958, No 182,[1] would in effect create a statutory privilege. We would hold that the statute as applied to actions for slander against a merchant neither creates a qualified privilege nor changes the burden of proof on

___

[1] Repealed and substantially re-enacted by PA 1961, No 236 (CLS 1961, § 600.2917 [Stat Ann 1962 Rev § 27A.2917]).

either plaintiff or defendant from that of the common-law action, but only limits the amount of damages plaintiff may recover under certain circumstances.

PA 1958, No 182, required that a plaintiff suing "a merchant, his or its agent, for  *  *  *  slander" must in addition to the common-law burden in a slander action, *when defendant has shown probable cause for his actions,* sustain the burden of proving that "the merchant, or his or its agent used  *  *  * unreasonable disregard of plaintiff's rights or sensibilities or acted with intent to injure plaintiff." If plaintiff fails to carry the burden as to the latter proofs, he may recover under this statute *only* compensatory damages.

If plaintiff carries the burden of proof that "the merchant, or his or its agent used  *  *  *  unreasonable disregard of plaintiff's rights or sensibilities or acted with intent to injure plaintiff," he may recover damages for or resulting from mental anguish or "punitive, exemplary or aggravated damages."

In light of the above discussion of the purpose of the statute, we do not believe that upon retrial the trial judge would experience any difficulty instructing the jury as to the burden of proof.

Reversed and remanded for new trial on the slander issue. Costs to abide the final result.

ADAMS and T. G. KAVANAGH, JJ., concurred with T. M. KAVANAGH, J.